PETER J. ELIASBERG, SBN 189110
 peliasberg@aclu-sc.org
AHILAN ARULANANTHAM, SBN 237841
 aarulanantham@aclu-sc.org
PETER BIBRING, SBN 223981
 pbibring@aclu-sc.org
JENNIFER PASQUARELLA, SBN 263241
 jpasquarella@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Facsimile:  (213) 977-5299

BARRETT S. LITT, SBN 45527
 blitt@littlaw.com
LINDSAY B. BATTLES, SBN 262862
 lbattles@littlaw.com
KAYE, MCLANE, BEDNARSKI & LITT
234 Colorado Blvd., Ste. 230
Pasadena, CA 91101
Telephone: (626) 844-7600 x112
Facsimile: (626) 844-7670

Attorneys for Plaintiffs
(continued on next page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO GONZALEZ, on behalf of himself and others similarly situated.<br><br>            Plaintiffs,<br><br>      vs.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; JOHN MORTON, in his official capacity; DAVID MARIN, in his official capacity; DAVID C. PALMATIER , in his official capacity,<br><br>            Defendants. | CASE NO.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND PETITION FOR WRIT OF HABEAS CORPUS** |

CHRIS NEWMAN, SBN 255616
 newman@ndlon.org
JESSICA KARP, SBN 277347
 jkarp@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
675 S. Park View Street, Suite B
Los Angeles, California 90057
Telephone: (213) 380-2214
Facsimile: (213) 380-2787

**JURISDICTION AND VENUE**

1.      This case challenges Immigration and Customs Enforcement's ("ICE") practice of issuing immigration holds, also known as immigration detainers, to individuals in the custody of federal, state, and local law enforcement agencies ("LEA") without probable cause to believe the individuals are removable in violation of the Fourth Amendment.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and Article III of the U.S. Constitution.  It has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief under 5 U.S.C. § 702.  Alternatively, this Court has subject matter jurisdiction under 28 U.S.C. § 2241, as the issuance of an immigration hold places Plaintiff in the concurrent custody of ICE.  Venue is proper under 28 U.S.C. § 1391(b)(2).

**INTRODUCTION**

2.      An immigration hold is a request that an LEA continue to detain an individual for 48 hours, excluding weekends and holidays, beyond the time he or she would otherwise be released from criminal custody, giving ICE extra time to investigate whether he or she is subject to removal and assume physical custody. Because immigration holds purport to authorize two to five days of imprisonment unrelated to the initial criminal custody, they effectively cause a new seizure, and must be supported by probable cause to believe the individual so detained is subject to detention and removal.  And yet, in practice, ICE has a pattern of not requiring its agents to establish probable cause before issuing immigration holds. On the contrary, ICE routinely begins to investigate whether an individual is subject to removal only *after* he or she has been subjected to additional detention under the immigration hold, or after he or she is in ICE's physical custody.  When it comes to immigration holds, ICE's mantra is: *Detain first, investigate later.*  As a result, ICE's issuance of immigration holds violates the Fourth Amendment by restraining and depriving individuals of their liberty without probable cause.

3.      Nationally, between fiscal year 2008 and the beginning of fiscal year 2012,

1

1  ICE issued immigration holds seeking the prolonged incarceration of nearly one

2  million people.  In 2012 alone, ICE sought the prolonged incarceration of 36,450

3  people in the custody of law enforcement agencies within ICE's area of

4  jurisdiction for Los Angeles by issuing immigration holds.

5  4.    ICE's issuance of immigration holds without probable cause to believe that a

6  person is subject to removal has restrained and deprived of their liberty thousands

7  of people who are not actually removable, including American citizens and lawful

8  permanent residents without criminal convictions that would render them

9  removable.

10  5.    Plaintiff Gerardo Gonzalez, Jr. is one such person.  He is a U.S.-born citizen

11  who is presently subject to an immigration hold while incarcerated in a Los

12  Angeles County jail.  Because ICE does not require that its agents establish

13  probable cause before issuing immigration holds, ICE placed a hold on Plaintiff

14  Gonzalez.  Upon information and belief, ICE placed the hold solely because a LEA

15  officer mistakenly wrote at booking that Plaintiff was born in Mexico, despite his

16  testimony that he was born in California and ample evidence at ICE's disposal that

17  Plaintiff Gonzalez is in fact a U.S. citizen, who was born in Pacoima, California.

18  6.    Plaintiff Gonzalez seeks on behalf of himself and the proposed class

19  declaratory and injunctive relief under the Fourth Amendment for ongoing

20  violations of their rights, or, in the alternative, habeas corpus relief.

21  **PARTIES**

22  7.    Plaintiff Gerardo Gonzalez, Jr. is a 23-year-old United States citizen, who

23  was born in Pacoima, California.  Mr. Gonzalez is a resident of Los Angeles,

24  California.  He is currently detained awaiting trial in the North County

25  Correctional Facility of the Los Angeles County jails in Castaic, California.  ICE

26  has lodged an immigration hold against him.  Plaintiff Gonzalez seeks injunctive

27  and declaratory relief on behalf of himself and the proposed class, as described

28  below.

8.      Defendant ICE is a component of the Department of Homeland Security ("DHS") and responsible for overseeing and enforcing federal laws governing border control, customs, trade and immigration, including its immigration detainer practices.

9.      Defendant John Morton is the Director of ICE.  Director Morton establishes immigration detainer policy for ICE and its subdivisions, including the application of detainer regulations and approval of the use of the Form I-247 detainer. Plaintiff sues Director Morton in his official capacity.

10.     Defendant David Marin is the Acting Field Office Director ("FOD") for the Los Angeles District of ICE, which has responsibility for the counties of Los Angeles, Orange, Riverside, San Bernardino, Ventura, Santa Barbara, and San Luis Obispo.  Acting FOD Marin has ultimate responsibility for all immigration detainers issued from the Los Angeles Field Office, including any and all sub-offices.  Based on information and belief, the Los Angeles Field Office (including any and all sub-offices) is listed as the principal ICE custodian on detainers issued out of its area of responsibility.  Plaintiff sues Mr. Marin in his official capacity.

11.     Defendant David C. Palmatier is the Unit Chief for the Law Enforcement Service Center ("LESC") of ICE.  Chief Palmatier oversees the issuance of immigration holds out of the LESC pursuant to law enforcement inquiries throughout the United States.  Based on information and belief, LESC is listed as the ICE custodian on detainers issued from the LESC and is listed as emergency custodian for detainers issued from ICE Field Offices, including Los Angeles. Plaintiff sues Chief Palmatier in his official capacity.[1]

---

[1] Plaintiff believes that each of the three individual Defendants currently hold their respective positions.  Should any one of the named Defendants no longer hold their position, their successor is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

## STATEMENT OF FACTS

**Immigration Detainers, also Known as "Immigration Holds" or "ICE Holds"**

12.    In 2008, ICE launched a national data-sharing program called "Secure Communities" (or "S-Comm"), the purpose of which is to identify individuals possibly subject to removal by sharing fingerprints gathered by the federal, state, and local criminal justice systems with the federal immigration system.  Under S-Comm, any fingerprints taken by criminal law enforcement agencies are automatically run through ICE and FBI databases.  Upon receiving the transmittal, ICE agents in ICE's Law Enforcement Support Center ("LESC") and/or the relevant ICE Field Office may send the arresting law enforcement agency a Form I-247, known as an "immigration detainer," "immigration hold," or "ICE hold," requesting that the person be held in custody for immigration purposes after his or her criminal custody ends.

13.    The purpose of an immigration detainer is to "advise another law enforcement agency that [ICE] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.  The detainer is a request that such agency advise [ICE], prior to release of the alien, in order for [ICE] to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." *Id.* § 287.7(a).  In addition, the immigration detainer requests that the LEA hold the alien for a period of no more than 48 hours excluding Saturdays, Sundays, and holidays "*beyond the time when the subject would have otherwise been released from your custody.*" 8 C.F.R. § 287.7(d) (emphasis added).  Over a weekend, this period of additional detention can last up to five days.  Immigration detainers are not warrants or court orders, and they are not issued or approved by judicial officers; instead, they may be issued by a wide variety of immigration officers, including immigration enforcement agents and deportation officers. *Id.* § 287.7(b).

4

14.     Immigration detainers are issued on various grounds.  The face of the current Form I-247 lists four possible bases for ICE to issue the hold, including that ICE has "[d]etermined that there is reason to believe the individual is an alien subject to removal from the United States;" "[i]nitiated removal proceedings and served a Notice to Appear or other charging document," with the charging document attached; "[s]erved a warrant of arrest for removal proceedings," with the warrant attached; or "[o]btained an order of deportation or removal from the United States for this person."

15.     The ICE agent may check a box next to one of these four grounds to indicate the basis for the hold.

16.     Prior to December 21, 2012, the Form I-247 listed "[i]nitiated an investigation to determine whether this person is subject to removal from the United States" as the first of four grounds for placing a detainer.  When ICE modified the Form on December 21, 2012, it replaced the "initiated an investigation" language with "[d]etermined that there is reason to believe the individual is an alien subject to removal from the United States."

17.     Upon information and belief, although ICE changed the language on the detainer form, it did not change the process by which it assesses whether to issue a detainer.  ICE still routinely fails to perform an adequate investigation before issuing detainers using the current Form I-247, just as it did under the previous form.  Therefore, when ICE issues a detainer and checks the box marked either "[i]nitiated an investigation to determine whether this person is subject to removal from the United States" or "[d]etermined that there is reason to believe the individual is an alien subject to removal from the United States," it does so to *begin* an investigation to determine whether the person is subject to removal – not after having done an investigation.  Often, ICE does not actually investigate until the subject is transferred to ICE's physical custody.  Indeed, in a recent federal lawsuit regarding the wrongful detention of another U.S. citizen on an immigration

1    detainer, ICE's attorney told the district court that ICE uses detainers as "a stop

2    gap measure. . . to give ICE time to investigate and determine whether somebody's

3    an alien, and/or subject to removal, before local law enforcement releases that

4    person from custody." Oral Argument Transcript, ECF #79, *Galarza v. Szalczyk*,

5    No. 10-06815 (E.D. Pa. Jan. 10, 2012).

6    18.    Upon information and belief, since December 21, 2012, ICE has issued

7    detainers using both the previous and current versions of the Form.

8    19.    Between October 2009 and February 2013, the ICE Los Angeles Field

9    Office checked the box on the previous I-247 Form for "[i]nitiated an investigation

10    to determine whether this person is subject to removal from the United States" and

11    on the current I-247 Form for "[d]etermined that there is reason to believe the

12    individual is an alien subject to removal from the United States" on approximately

13    73 percent of the holds it issues.  On an additional 9 percent of holds, it failed to

14    specify any basis on which the hold was issued.

15    20.    ICE agents know – and intend – that these detainers will cause the subjects

16    to be imprisoned for an additional two to five days after they should be released.

17    Yet in practice, ICE agents routinely issue immigration holds without probable

18    cause to believe that the subjects are removable from the United States.  An I-247

19    Form with the "initiated an investigation" or "reason to believe" box checked is not

20    necessarily supported by an investigation and prior determination by ICE as to the

21    person's immigration status.  ICE also does not require that agents have probable

22    cause to believe a person is removable from the United States before issuing an I-

23    247 Form with the boxes checked for an administrative arrest warrant or a Notice

24    to Appear or other charging document, nor does ICE require that administrative

25    arrest warrants or Notices to Appear be issued by judicial officers.

26    21.    Upon information and belief, the decision to place a detainer is made by an

27    individual ICE agent after reviewing electronic ICE and FBI records triggered by a

28    person's fingerprints, as well as booking information from the LEA.  In general,

6

1   ICE's practice is to issue detainers without crosschecking this information or

2   inquiring into discrepancies to confirm whether a person is in fact removable,

3   performing an adequate review of the available files and databases, or interviewing

4   the subject. ICE routinely treats inconclusive or ambiguous evidence of

5   removability as sufficient reason to issue a detainer. For example, ICE routinely

6   places detainers on lawful permanent residents prior to any criminal conviction that

7   could make them removable, and on allegedly foreign-born subjects solely because

8   a database query fails to return affirmative evidence of the person's immigration

9   status.

10   22.      Due to ICE's failure to require ICE agents to have probable cause before

11   issuing a detainer and common errors in immigration databases, ICE commonly

12   issues immigration detainers in error on persons who are not subject to removal,

13   such as United States citizens and lawful permanent residents who are not subject

14   to removal. According to ICE's own data, between fiscal year 2008 and the

15   beginning of fiscal year 2012, ICE issued nearly one million detainers to LEAs

16   nationwide. Of these, it issued 28,489 detainers against lawful permanent residents

17   (a.k.a. "green card" holders), 20,281 of whom had no record of any criminal

18   conviction for which they could be removable. According to the same data, ICE

19   issued 834 detainers against U.S. citizens. Upon information and belief, this

20   number only represents a fraction of the U.S. citizens who receive immigration

21   holds because many, if not most, have no recourse to meaningfully challenge their

22   detainer and inform ICE while in custody on the detainer that they are U.S.

23   citizens.

24   23.      Nationwide, the fact that ICE places detainers on United States citizens has

25   been the subject of litigation and has been widely reported. For example, in

26   November 2008, ICE placed a detainer on Ernesto Galarza, a 34-year-old U.S.-

27   born citizen, resulting in his three-day imprisonment without probable cause.

28   *Galarza v. Szalczyk*, 2012 WL 1080020 (E.D. Pa., March 30, 2012). ICE twice

1  placed a hold on Ada Morales, a naturalized U.S. citizen, first in 2004 and then in

2  2009, resulting in her prolonged detention. Complaint at 3, 15, *Morales v.*

3  *Chadbourne*, No. 12-CV-301 (D.R.I. filed Apr. 24, 2012). In 2007, ICE placed a

4  hold on Conway Wiltshire, a naturalized U.S. citizen, and subsequently held him

5  for three months in immigration custody. Complaint at 3-5, *Wiltshire v. United*

6  *States*, No. 09-4745 (E.D. Pa. filed Oct. 16, 2009). In 2008, ICE placed a hold on

7  Mark Lyttle, a U.S.-born citizen, despite his repeated statements that he was born

8  in the U.S., resulting in his prolonged incarceration 51 days beyond his release

9  date. Complaint, *Lyttle v. United States of America*, No. 4:11-CV-00152 (M.D.

10  Ga. Oct. 13, 2010). *See* William Finnegan, *The Deportation Machine: A citizen*

11  *trapped in the system*, THE NEW YORKER, Apr. 29, 2013. *See also, e.g.,*

12  Complaint, *Makowski v. Holder et al.*, No. 12-cv-05265 (N.D. Ill. filed July 3,

13  2012) (ICE placed hold on U.S. citizen prolonging his incarceration for

14  approximately two additional months); Complaint at 5, *Castillo v. Swarski*, No.

15  C08-5683 (W.D. Wa. filed Nov. 13, 2008) (ICE placed hold on naturalized U.S.

16  citizen and detained him in immigration custody for 226 days before

17  acknowledging that he was a citizen).

18  24.    The ICE Los Angeles Field Office also often lodges detainers against U.S.

19  citizens and non-removable lawful permanent residents. For example, in

20  November 2011, the Los Angeles Field Office placed a hold on Romy Campos, a

21  19-year-old U.S.-born woman who is a dual citizen with the United States and

22  Spain, simply because an electronic record showed she once entered the country on

23  her Spanish passport years prior when traveling alone as a minor. ICE issued a

24  detainer in spite of other evidence at its disposal that conclusively demonstrated

25  her U.S. citizenship. Due to the immigration hold, Ms. Campos was unable to post

26  bail to secure her release from criminal custody and was detained by the Los

27  Angeles Sheriff's Department for two days beyond her release date on the

28  immigration hold despite her repeated protestations that she was an American

8

1    citizen.

2    25.    Also in November 2011, the Los Angeles Field Office placed a hold on

3    Antonio Montejano, a 40-year-old U.S.-born citizen, in spite of evidence at its

4    disposal that would have demonstrated his citizenship, including his declaration

5    when booked into local police and Sheriff's custody that he was born in Los

6    Angeles, California, evidence in the immigration system that he sponsored his wife

7    for her green card on account of his citizenship, and evidence that he possesses a

8    U.S. passport.  Due to the immigration hold, the Santa Monica Police Department

9    refused to allow him to post bail to secure his release from criminal custody and

10   the Los Angeles Sheriff's Department detained him for two days beyond his

11   release date on the immigration hold despite his repeated protestations that he was

12   an American citizen.

13   26.    ICE provides no meaningful way for a detainee to contest the immigration

14   hold lodged against him or her.  Rather, a detainee typically must wait to be finally

15   transferred to immigration custody before he or she will have an opportunity to

16   demonstrate that he or she is not in fact removable and/or that he or she should

17   have been released.

18            **The Impact of Immigration Detainers**

19   27.    Immigration detainers can significantly impact the custody and criminal

20   proceedings of their subjects.

21   28.    Pretrial detainees subject to immigration detainers may stay in LEA custody

22   far longer than they otherwise would, due solely to the detainer.  For example, on

23   average, inmates in the Los Angeles County jails with immigration holds lodged

24   against them spend on average 20.6 days longer in jail than inmates without

25   immigration holds.  This difference occurs even though a disproportionately large

26   share of these inmates are classified as low custody, meaning they are likely being

27   held pretrial on low level non-violent offenses and thus are, on average, better

28   candidates for pretrial release or other diversion programs than other inmates in the

1   jails who do not have immigration holds.

2   29.     Within the jurisdiction of the ICE Los Angeles Field Office, immigration

3   detainers often prevent pretrial inmates from posting bail on their criminal charges,

4   either because an LEA will not permit inmates to post bail if there is an

5   immigration hold present (a practice that is also unlawful) or because inmates

6   recognize that if they post bail to secure their release from criminal custody, they

7   will be transferred to ICE custody, where they could be subject to removal or

8   mandatory detention and may lose the opportunity to contest the criminal charges

9   against them.

10  30.     An immigration detainer can affect the disposition of a criminal case by, for

11  example, preventing an inmate from accepting a plea contingent on participation in

12  diversion programs, remedial courses or payment of a fee, if the inmate believes he

13  will subsequently be transferred to ICE custody and will be unable to comply with

14  the terms of the agreement.

15  31.     An immigration detainer can also affect an inmate's prison or jail

16  classifications or eligibility for work programs.  For example, under California

17  Department of Corrections and Rehabilitation ("CDCR") regulations, an

18  immigration detainer affects a prisoner's classification score and affects where he

19  or she is housed.  According to these regulations, prisoners with immigration holds

20  may not be housed in Level One minimum-security facilities, and therefore, many

21  are sent to CDCR facilities out of state.  CDCR regulations also prevent inmates

22  with immigration detainers from participating in or benefiting from early release,

23  vocational, educational, and substance abuse programs, and immigration holds are

24  considered as a factor in deciding whether to recommend the recall of an inmate's

25  commitment and medical parole.

26  32.     Because the Form I-247 requests that an LEA maintain custody of the

27  subject for an additional 48 hours, excluding weekends and holidays, beyond his or

28  her release date, an inmate with an immigration detainer generally will spend two

10

1    to five days more in LEA custody after the time when he or she would otherwise

2    have been released.

3    33.    Federal, state, and local LEAs within the jurisdiction of the ICE Los Angeles

4    Field Office have policies or practices of complying with all immigration holds

5    issued to individuals in their physical custody and continuing to detain those

6    individuals for 48 hours, excluding weekends and holidays, beyond the time they

7    would otherwise be released from criminal custody.[2]

8         **Plaintiff's Allegations**

9              *Gerardo Gonzalez, Jr.*

10   34.    Gerardo Gonzalez, Jr. was born at home in Pacoima, California, and is thus a

11   U.S. citizen.  He is twenty-three years old.  *See* Exhibit A, Birth Certificate.

12   35.    Plaintiff Gonzalez has been arrested on numerous occasions, first as a

13   juvenile and later as an adult.  Records of his prior arrests all indicate that he was

14   born in California.  His probation record indicates that he is a U.S. citizen.

15   36.    Upon information and belief, FBI records of each of Plaintiff Gonzalez's

16   arrests indicate that he was born in California and is a U.S. citizen.  In particular,

17   the FBI fingerprint form that an LEA completes and sends to the FBI at the time an

18   arrestee is booked into custody includes the detainee's place of birth and

19   citizenship.[3]  Plaintiff Gonzalez's fingerprints, as well as his FBI number, would

20   trigger these records, and would have been available to the ICE agent making the

21   detainer determination.

22

23   [2] The only federal, state, or local LEA within the jurisdiction of the Los Angeles
     Field Office known to have a policy to limit its compliance with immigration holds
24   is the Los Angeles Police Department, which complies with all immigration holds
     except those involving individuals who have no prior felony convictions, are not
25   documented gang members, and have no open criminal charges aside from certain
     misdemeanor charges with bails of $4,999 or less and certain Vehicle Code
26   violation charges with bail of $2,499 or less.
     [3] *See* FBI Fingerprint Form, *available at*
27   http://education.cua.edu/res/docs/Fingerprint%20Card%20Application.pdf.
28
                                        11

37.   On December 27, 2012, the Los Angeles Police Department ("LAPD") arrested Plaintiff Gonzalez on a felony charge of possession of methamphetamines. Since his arrest, he has been detained in LAPD and Los Angeles Sheriff's Department ("LASD") custody while he awaits resolution of his criminal case.

38.   Until May 2013, Plaintiff Gonzalez was subject to a parole hold and not eligible for release on bail.  The parole hold expired on or around May 2013, and he is now eligible for release on bail at $95,000.

39.   Upon information and belief, at booking, an LAPD or an LASD employee incorrectly wrote on Plaintiff Gonzalez's booking record that he was born in Mexico, despite Plaintiff Gonzalez's statement that he was born in California.

40.   On January 1, 2013, ICE placed an immigration detainer on Plaintiff Gonzalez.

41.   To his knowledge, Plaintiff Gonzalez has never been interviewed by or had any contact with ICE.

42.   Neither ICE nor the LASD informed Plaintiff Gonzalez that ICE had placed a detainer on him and neither served him with a copy of the detainer.  Plaintiff Gonzalez only learned that ICE had lodged an immigration detainer against him when his girlfriend attempted to post bail shortly after his parole hold expired, and a bail bondsman told her that he had an immigration hold.

43.   After his criminal defense attorney confirmed that he had an immigration hold, Plaintiff Gonzalez delayed posting bail and continued his next court appearance to provide time to get the immigration hold lifted.  If Plaintiff Gonzalez posts bail, he will be subject to unlawful detention for up to 5 days on the sole authority of the immigration hold and possibly subject to further unlawful detention by ICE.  If Plaintiff Gonzalez proceeds with his criminal case while subject to an immigration hold, he risks being convicted and sentenced to state prison, where the immigration hold is likely to impact the facility where he is sent, his prison classification, and access to remedial programs.

# CLASS ACTION ALLEGATIONS

44.    Plaintiff Gonzalez seeks class-wide injunctive and declaratory relief, under Federal Rules of Civil Procedure 23(a) and (b)(2).

45.    The proposed class is defined as all persons who are or will be (1) detained in the custody of a federal, state, or local law enforcement agency ("LEA"), (2) have an immigration hold placed on them by the ICE Los Angeles Field Office, and (3) are or will be detained by a federal, state or local LEA on the sole authority of the immigration hold when they become eligible for release from criminal custody.

<u>Numerosity</u>

46.    The class meets the numerosity requirement of Rule 23(a)(1). According to ICE data, it issued nearly one million immigration detainers between fiscal year 2008 and the start of fiscal year 2012.

47.    According to ICE data, between October 2009 and February 2013, the ICE Los Angeles Field Office issued 125,331 detainers. In 2012, the ICE Los Angeles Field Office issued 36,450 detainers. In 2011, it issued 44,574 detainers. And in 2010, it issued 37,207 detainers.

48.    Between October 2009 and February 2013, the ICE Los Angeles Field Office checked the box on the previous I-247 Form for "initiated an investigation" and on the current I-247 Form for "determined there is reason to believe" on approximately 73 percent of the detainers it issued.

49.    Within the jurisdiction of the ICE Los Angeles Field Office, nearly all individuals subject to immigration detainers are detained by the federal, state, or local LEA beyond the time they are otherwise eligible for release.

50.    Joinder of all class members is impractical. As ICE continuously lodges immigration detainers against individuals in custody and assumes physical custody of those held on detainers, the membership of the class changes continuously. The inclusion within the class of future inmates also makes joinder of all members

1    impracticable.

2                              Commonality

3    51.    The class meets the commonality requirement of Rule 23(a)(2).  Questions

4    of law and fact presented by the named plaintiff are common to other members of

5    the class.  The common questions of fact or law that unite the claims of the class

6    include the following:

7           ▪   Whether ICE has a practice of issuing immigration detainers without

8               determining whether there is probable cause to believe that the person

9               subject to the detainer is removable?

10          ▪   Whether that practice, which results in class members being detained in

11              federal, state or local jails after they are otherwise entitled to release,

12              violates the Fourth Amendment of the United States Constitution?

13                              Typicality

14   52.    The claims of Plaintiff Gonzalez are typical of those of the class as a whole.

15   Both Mr. Gonzalez and the members of the proposed class are subject to an

16   immigration hold and they allege that ICE has a practice of issuing these holds

17   without determining that there is probable cause to believe that they are removable,

18   and that this practice violates either the Fourth or Fifth Amendments.

19                       Adequacy of Representation

20   53.    Plaintiff Gonzalez is an adequate class representative and thus meets the

21   requirements of Rule 23(a)(4).  Plaintiff Gonzalez is presently in the custody of the

22   LASD; ICE has issued an immigration hold without making a determination that

23   there is probable cause to believe that he is removable, and he will be detained by

24   LASD on the sole authority of the immigration hold when he becomes eligible for

25   release from criminal custody.  He has no conflict of interest with other class

26   members, will fairly and adequately protect the interests of the class, and

27   understands his responsibilities as a class representative.

28   54.    Plaintiff Gonzalez is represented by highly qualified and experienced

                                       14

counsel:  The ACLU of Southern California, the National Day Laborer Organizing

Network and Litt, Estuar & Kitson, who, as elaborated below, are all highly

experienced in cases of this type and subject-matter.  In particular, all of Plaintiff's

counsel also serve as counsel in a federal class action, *Roy, et al. v. County of Los

Angeles*, CV 12-9012 (C.D. Cal. filed Oct. 19, 2012), brought on behalf of current

and former inmates of the Los Angeles County jails who are or were detained on

an immigration hold.

55.     Plaintiffs' co-lead counsel on behalf of the ACLU of Southern California,

Peter Eliasberg, is the Legal Director of the ACLU Foundation of Southern

California.  Since its founding in 1923, the ACLU of Southern California has been

litigating a broad variety of civil rights cases, including prisoners' rights cases.

Attorney Eliasberg has been lead counsel or co-lead counsel in numerous federal

civil rights class actions in the Central District of California as well as co-counsel

on a federal habeas petition on behalf of Susan McDougal.  He has been lead

counsel in civil rights matters before the United States Court of Appeals for the

Ninth Circuit, the California Supreme Court, and the United States Supreme Court,

and has argued cases before both the California and the U.S. Supreme Courts.

Since 2009, Eliasberg has served as co-lead class counsel for all the inmates in Los

Angeles County Jails in *Rutherford v. Baca* and in 2012 was named co-lead

counsel for all the inmates in Men's Central Jail and Twin Towers in *Rosas v.

Baca*, a federal class action in this Court.  In addition, co-counsel Jennifer

Pasquarella, Peter Bibring, and Ahilan Arulanantham all have experience serving

as class counsel in large civil rights cases litigated in federal court.

56.     Plaintiffs' co-lead counsel on behalf of the National Day Laborer Organizing

Network (NDLON), Chris Newman, is the Legal Director of the National Day

Laborer Organizing Network.  Since its founding in 2001, NDLON has litigated a

variety of constitutional and civil rights cases.  Attorney Newman currently serves

as co-counsel in the civil rights class action *Valle Del Sol v. Whiting*, No.10-01061

1   (D. Ariz. filed May 17, 2010).  He has also been counsel in constitutional and civil

2   rights matters before the United States Court of Appeals for the Ninth and Eleventh

3   Circuits, including *Hispanic Interest Coalition of Alabama v. Bentley*, No. 11-

4   14535 (11th Cir.), as well as the Central District of California. In addition, Jessica

5   Karp, staff attorney at NDLON, has experience serving as counsel in civil rights

6   class action *Valle Del Sol v. Whiting*, and has been counsel in constitutional and

7   civil rights matters before the United States Court of Appeals for the Ninth and

8   Eleventh Circuits.

9   57.    Plaintiffs' co-lead counsel on behalf of Kaye, McLane, Bednarski & Litt,

10  Barrett S. Litt, specializes in complex civil rights litigation, particularly civil rights

11  class actions, and has extensive experience handling jail matters. The law

12  enforcement or jail/prison class actions in which he has been named class counsel

13  in certified classes are listed below. (Where there is a reported decision, the

14  citation is provided.)

15  &#10148; *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, Case No.:

16      CV 07-3072 AHM (FMMx) (class action for injunctive relief and damages

17      for challenging the LAPD's assault on a lawful immigrant rights rally in

18      MacArthur Park on May 1, 2007: *Multi-Ethnic Immigrant Worker Network*

19      *v. City of Los Angeles*, 24 F.R.D.  621 (C.D. Cal. 2007) (certifying class).

20  &#10148; *Williams v. Block*, Case No.: CV-97-03826-CW (C.D. Cal.) and related

21      cases (a series of county jail overdetention and strip search cases, settled for

22      $27 million and a complete revamp of jail procedures); *Streit v. County of*

23      *Los Angeles*, 236 F.3d 552, 556 (9th Cir. 2001) (finding that sheriff is a

24      county actor and referring, at fn. 2, to the concurrent, unreported reversal of

25      the denial of class certification by the district court).

26  &#10148; *Craft v. County of San Bernardino,* No. EDCV05-00359 SGL (C.D. Cal.)

27      (certified class action against the Sheriff of San Bernardino County for

28      blanket strip searches of detainees, arrestees, and persons ordered released

from custody; partial summary judgment decided for plaintiffs; $25.5 million settlement approved April 1, 2008); *Craft v. County of San Bernardino*, 468 F.Supp.2d 1172 (C.D. Cal. 2006) (approving class settlement).

➢ *Lopez v. Youngblood*, No. CV07-00474 LJO (DLBx) (E.D. Cal.) (class action against Kern County, California, for unlawful pre-arraignment and post-release strip searches and strip searches not conducted in private; class certification and summary judgment on liability granted; settlement approved in 2011 for class fund of approximately $7 million); *Lopez v. Youngblood*, 2009 WL 909817 (E.D. Cal. Apr. 1, 2009).

➢ *Bynum v. District of Columbia*, No. 02-956 (RCL) (D.D.C.) (class action against the District of Columbia for overdetentions and blanket strip searches of pretrial jail detainees after they have been ordered released from custody; final approval of $12 million settlement occurred January 2006); *Bynum v. Dist. of Columbia*, 214 F.R.D. 27 (D.D.C. 2003) (certifying class)

➢ *Barnes v. District of Columbia,* No: 06-315 (RCL) (D.D.C.) (class action against District of Columbia for continuing to both over-detain and strip search post-release inmates despite settlement in *Bynum, supra*; class certification granted; partial summary judgment granted plaintiffs and remaining issues to be set for trial); *Barnes v. Dist. of Columbia*, 242 F.R.D. 113 (D.D.C. 2007) (certifying class)]

➢ *Johnson v. District of Columbia*, Case No. 02-2364 (RMC) (D.D.C.) (class action against the District of Columbia and United States Marshals for blanket strip searches of arrestees initially taken to jail without reasonable suspicion and not involved in drug or violent activity; judgment for defendant on appeal); *Johnson v. Dist. of Columbia*, 248 F.R.D. 46 (D.D.C. 2008) (certifying class).

➢ *Jones v. Murphy*, Case No. CCB 05 CV 1287 (D. Md.) (class action

17

1    challenging overdetentions and illegal strip searches in Central Booking in

2    Baltimore, MD, jail; class certification granted in part and denied in part;

3    summary judgment motions pending); *Jones v. Murphy*, 256 F.R.D. 519 (D.

4    Md. 2009) (certifying class).

5    ➤ *Gail Marie Harrington-Wisely, et al. v. State of California, et al.*, Superior

6    Court Case No. BC 227373 (backscatter x-ray searches of visitors to

7    California prisons without reasonable suspicion; class certification granted;

8    stipulated injunction entered; case currently pending to sort out procedural

9    issues preliminary to appeal or settlement)

10   58.    Mr. Litt has authored articles on law enforcement related class certification

11   issues. See "Class Certification in Police/Law Enforcement Cases," *Civil Rights*

12   *Litigation and Attorney's Fee Annual Handbook*, Vol. 18, Ch. 3, West Publishing

13   2002; "Obtaining Class Attorney's Fees," *Civil Rights Litigation and Attorney's*

14   *Fee Annual Handbook*, Vol. 26, Ch. 15, West Publishing 2010.

15   59.    Plaintiffs meet the requirement of Rule 23(b)(2), as Defendants have acted,

16   or omitted to act, on grounds generally applicable to the class, thereby making

17   equitable relief appropriate with respect to the class as a whole.

18   **CLAIMS**

19               <u>First Cause of Action:</u>

20       <u>Fourth Amendment Violation (Unlawful Seizure)</u>

21   60.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully

22   set forth herein.

23   61.    As set forth above, Defendants' issuance of immigration holds causes

24   Plaintiff and other class members prejudice by unreasonably taking away, limiting,

25   and otherwise impacting their liberty without probable cause to believe they are

26   removable in violation of the Fourth Amendment.

27               <u>Second Cause of Action:</u>

28       <u>Fifth Amendment Violation (Unreasonable Over-detention)</u>

18

62.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

63.     This cause of action is brought as an alternative to the first cause of action, in the event the court rules that the Fourth Amendment is not available to challenge the detention of Plaintiff and other class members on the basis of an immigration hold.

64.     As set forth above, Defendants' issuance of immigration holds causes Plaintiff and other class members prejudice by unreasonably taking away, limiting, and otherwise impacting their liberty in violation of their due process right to be released within a reasonable time after the initial reason for their detention has ended.

## Third Cause of Action:
## Petition for Writ of Habeas Corpus

65.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

66.     This claim for relief is brought as an alternative to the first claim for relief, in the event the court rules that the only vehicle for relief is by writ of habeas corpus.

67.     The issuance of an immigration detainer places Plaintiff in federal custody for the purposes of 28 U.S.C. § 2241.

68.     The issuance of an immigration detainer against Plaintiff and those similarly situated results in detention that violates the Fourth Amendment or, alternatively, the Fifth Amendment.

69.     Plaintiff seeks to pursue a representative action to represent the proposed class.

/ / /

/ / /

/ / /

19

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court grant the following relief:

1. Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from issuing an immigration hold without first determining that there is probable cause to believe the subject is removable;

2. Issue an injunction ordering Defendants, their subordinates, agents, employees, and all others acting in concert with them to rescind any existing immigration holds and reissue them only if they first determine that there is probable cause to believe the person is removable;

3. Enter a judgment declaring that Defendants' detention of Plaintiff and other members of the proposed class solely on the basis of an immigration hold not supported by probable cause violates the Fourth Amendment;

4. Award Plaintiffs and other members of the proposed class reasonable attorneys' fees and costs; and

5. Grant any other relief that this Court may deem fit and proper.

Dated: June 19, 2013                    Respectfully submitted,

By: _____
JENNIFER PASQUARELLA
ACLU Foundation of Southern California

20

## STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

## COUNTY OF LOS ANGELES • REGISTRAR-RECORDER/COUNTY CLERK

**FILED** FEB 26 1991 **COUNTY RECORDER**

89-570976

104-

**DELAYED REGISTRATION OF BIRTH**
**STATE OF CALIFORNIA**

31033

STATE FILE NUMBER

| | | | |
|---|---|---|---|
| **FACTS OF BIRTH** | 1A. NAME OF CHILD—FIRST (GIVEN) Gerardo | 1B. MIDDLE | 1C. LAST (FAMILY) Gonzalez, Jr. |

2 SEX male 3 MONTH, DAY, YEAR 1989 4 NAME OF PHYSICIAN (OR ATTENDANT OR CERTIFIER OR OTHER PERSON ATTENDING THIS BIRTH) Violeta Zapata

5A. PLACE OF BIRTH—HOSPITAL, STREET, NUMBER, LOCATION home-12912 Louvre Street 5B. CITY OR TOWN Pacoima 5C. COUNTY Los Angeles 5D. STATE California

**FATHER**

6A. NAME OF FATHER—FIRST (GIVEN) Gerardo 6B. MIDDLE 6C. LAST (FAMILY) Gonzalez, Sr.

7. BIRTHPLACE (STATE OR FOREIGN COUNTRY) Mexico 8A. RACE white 8B. ETHNICITY 9 DATE OF BIRTH—MONTH, DAY, YEAR 4-21-1972

**MOTHER**

10A. NAME OF MOTHER—FIRST (GIVEN) Sandra 10B. MIDDLE Ivonne 10C. LAST—(FAMILY) Sierra Zapata

11. BIRTHPLACE (STATE OR FOREIGN COUNTRY) Mexico 12 RACE white 12A ETHNICITY Mexican 13 DATE OF BIRTH—MONTH, DAY, YEAR 1-25-1970

**CERTIFICATION OF APPLICANT**

I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT 14 SIGNATURE Sandra Ivonne Sierra

15 I AM THE (CHECK ONE) ☐ PARENT ☐ GUARDIAN ☐ PERSON WHOSE BIRTH IS BEING REGISTERED ☐ ATTENDANT AT BIRTH

16. DATE SIGNED 1-29-91 17. ADDRESS OF APPLICANT (STREET, CITY, STATE) 14646 Blythe st Hll Cruz 18A. DATE OF DEATH 18B. STATE FILE NUMBER

**FIRST SUPPORTING AFFIDAVIT**

I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT AND THAT I HAD PERSONAL KNOWLEDGE OF THIS BIRTH AT THE TIME OF OCCURRENCE FOR THE FOLLOWING REASON

19A. SIGNATURE OF PERSON COMPLETING THE AFFIDAVIT Gerardo Gonzalez 19B. RELATIONSHIP TO PERSON WHOSE NAME IS ENTERED IN ITEM 1 Father 19C. AGE OF PERSON COMPLETING THE AFFIDAVIT 18 yrs

19D. DATE SIGNED 1-29-91 19E. ADDRESS OF PERSON COMPLETING THE AFFIDAVIT (STREET, CITY, STATE, ZIP) 14646 Blythe st Hll D.C. CA. 91402

**SECOND SUPPORTING AFFIDAVIT**

I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT AND THAT I HAD PERSONAL KNOWLEDGE OF THIS BIRTH AT THE TIME OF OCCURRENCE FOR THE FOLLOWING REASON Valley Presbyterian Hospital of Van Nuys, CA

20A. SIGNATURE OF PERSON COMPLETING THE AFFIDAVIT Ora Figueroa 20B. RELATIONSHIP TO PERSON WHOSE NAME IS ENTERED IN ITEM 1 None-Birth Certificate Clerk 20C. AGE OF PERSON COMPLETING THE AFFIDAVIT 21

20D. DATE SIGNED 1/29/91 20E. ADDRESS OF PERSON COMPLETING THE AFFIDAVIT (STREET, CITY, STATE, ZIP) 15107 Vanowen St., Van Nuys, CA 91405

DO NOT WRITE BELOW THIS SPACE—FOR STATE REGISTRAR USE ONLY

**SUPPORTING DOCUMENTS**

21A TYPE Hospital Record, Valley Presbyterian, Van Nuys, CA DATE ISSUED 1-9-91 DATE ORIGINAL MADE 8-1-89
21B BY WHOM ISSUED AND SIGNED (child brought to hospital after the birth)
21C

**EVIDENCE AS STATED IN DOCUMENTS**

22A DATE OF BIRTH OR AGE 8-1-89 22B BIRTHPLACE Pacoima, California NAME OF FATHER Gerardo Gonzalez MAIDEN NAME OF MOTHER Sandra
22C

**STATE REGISTRAR**

I HEREBY CERTIFY THAT NO PRIOR CERTIFICATE HAS BEEN FOUND ON FILE IN THIS OFFICE FOR THE ABOVE REGISTRANT. THE EVIDENCE HAS BEEN REVIEWED AND SAID EVIDENCE SUBSTANTIATES THE FACTS AS SET FORTH IN THE FOREGOING ABSTRACT 23 OFFICE OF STATE REGISTRAR OFFICE OF THE STATE REGISTRAR OF VITAL STATISTICS 24. DATE REGISTERED FEB 07 1991

STATE OF CALIFORNIA, DEPARTMENT OF HEALTH SERVICES, OFFICE OF STATE REGISTRAR (Rev. 7-90) FORM VS 85

This is to certify that this document is a true copy of the official record filed with the Registrar-Recorder/County Clerk.

Conny B. McCormack

CONNY B. McCORMACK
Registrar-Recorder/County Clerk

APR 0 2 2001

19-328528

This copy not valid unless prepared on engraved border displaying the Seal and Signature of the Registrar-Recorder/County Clerk.



**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV13- 4416 GAF (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>GERARDO GONZALEZ, on behalf of himself | DEFENDANTS<br>IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; JOHN MORTON, in his official capacity; DAVID MARIN, in his official capacity; DAVID C. PALMATIER, in his official capacity |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Peter J. Eliasberg, ACLU Foundation of Southern California<br>1313 W. 8th St., Los Angeles, CA 90017<br>(213) 977-9500 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes   ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fourth & Fifth Amendment, U.S. Constitution; 28 U.S.C. Section 2241.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☑ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV13- 4416

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 2:12-CV-09012-BRO-FFM

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date 6/19/13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |