JENNIFER PASQUARELLA (SBN 263241)
  *jpasquarella@aclusocal.org*
JESSICA KARP BANSAL (SBN 277347)
  *jbansal@aclusocal*.org
ZOE MCKINNEY (SBN 312877)
  *zmckinney@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Facsimile:  (213) 977-5299

Attorneys for Plaintiffs
(continued on next page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| GERARDO GONZALEZ; et al., | Case No. CV 13-04416 AB (FFMx) |
| Plaintiffs, | Honorable André Birotte Jr. |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR COMPLIANCE AND LIMITED DISCOVERY** |
| IMMIGRATION AND CUSTOMS ENFORCEMENT; et al., | |
| Defendants. | DATE: August 14, 2020<br>TIME: 10:30 a.m.<br>Ctrm: 7B<br>JUDGE: Hon. André Birotte Jr. |

1    BARRETT S. LITT (SBN 45527)
       *blitt@kmbllaw.com*
2    LINDSAY B. BATTLES (SBN 262862)
       *lbattles@kmbllaw.com*
3    KAYE, MCLANE, BEDNARSKI, & LITT
     975 East Green Street
4    Pasadena, California 91106
     Telephone: (626) 844-7660
5    Facsimile: (626) 844-7670

6    CHRIS NEWMAN (SBN 255616)
       *newman@ndlon.org*
7    NATIONAL DAY LABOR ORGANIZING NETWORK
     1030 S. Arroyo Pkwy, Suite 106
8    Pasadena, CA 91105
     Telephone: (626) 799-2160
9    Facsimile: (626) 799-3560

10   MARK M. FLEMING, *pro hac vice*
       *mfleming@heartlandalliance.org*
11   RUBEN LOYO, *pro hac vice*
       *rloyo@heartlandalliance.org*
12   NATIONAL IMMIGRANT JUSTICE CENTER
     224 S. Michigan Avenue, Suite 600
13   Chicago, IL 60604
     Telephone: (312) 660-1628
14   Facsimile:(312) 660-1505

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10

**TO THE HONORABLE COURT AND ALL PARTIES OF RECORD:**
**PLEASE TAKE NOTICE** that Plaintiffs hereby move this Court to compel Defendant ICE to comply with certain aspects of the Final Judgment, Dkt. 574, with which it is currently in noncompliance, and for limited discovery relating to Defendant ICE's compliance with this Court's Final Judgment. Plaintiffs concurrently filed a Memorandum of Points and Authorities in support of the motion. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place telephonically on June 17, 2020. Defendants oppose this motion.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED: July 17, 2020                    Respectfully submitted,

                                        s/ Jennifer Pasquarella

                                        JENNIFER PASQUARELLA

                                        Counsel for Plaintiffs

1   JENNIFER PASQUARELLA (SBN 263241)
      jpasquarella@aclusocal.org
2   JESSICA KARP BANSAL (SBN 277347)
      jbansal@aclusocal.org
3   ZOE MCKINNEY (SBN 312877)
      zmckinney@aclusocal.org
4   ACLU FOUNDATION OF SOUTHERN CALIFORNIA
    1313 W. 8th Street
5   Los Angeles, CA 90017
    Phone:  (213) 977-9500
6   Facsimile:  (213) 977-5299

7   Attorneys for Plaintiffs
    (continued on next page)

8

9

10                    **UNITED STATES DISTRICT COURT**
11                    **CENTRAL DISTRICT OF CALIFORNIA**
                          **WESTERN DIVISION**
12

13

14   GERARDO GONZALEZ; et al.,              Case No. CV 13-04416 AB (FFMx)

15              Plaintiffs,                 Honorable André Birotte Jr.

16   vs.                                    **MEMORANDUM OF POINTS**
                                            **AND AUTHORITIES IN**
17   IMMIGRATION AND CUSTOMS                **SUPPORT OF PLAINTIFFS'**
     ENFORCEMENT; et al.,                   **MOTION FOR COMPLIANCE**
18                                          **AND LIMITED DISCOVERY**
                Defendants.
19
                                            DATE: August 14, 2020
20                                          TIME: 10:30 a.m.
                                            Ctrm: 7B
21                                          JUDGE: Hon. André Birotte Jr.
22

23

24

25

26

27

28

                                    i

BARRETT S. LITT (SBN 45527)
  blitt@kmbllaw.com
LINDSAY B. BATTLES (SBN 262862)
  lbattles@kmbllaw.com
KAYE, MCLANE, BEDNARSKI, & LITT
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

CHRIS NEWMAN (SBN 255616)
  newman@ndlon.org
NATIONAL DAY LABOR ORGANIZING NETWORK
1030 S. Arroyo Pkwy, Suite 106
Pasadena, CA 91105
Telephone: (626) 799-2160
Facsimile: (626) 799-3560

MARK M. FLEMING, pro hac vice
  mfleming@heartlandalliance.org
RUBEN LOYO, pro hac vice
  rloyo@heartlandalliance.org
NATIONAL IMMIGRANT JUSTICE CENTER
224 S. Michigan Avenue, Suite 600
Chicago, IL 60604
Telephone: (312) 660-1628
Facsimile:(312) 660-1505

ii

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………….. 1

FACTUAL BACKGROUND…………………………………………….1

   I.   Procedural History……………………………………………… 1

   II.   ICE's Failure to Rescind the Enjoined Detainers…………………………2

   III. Examples of ICE's Failure to Rescind Enjoined Detainers……………..5

ARGUMENT………………………………………………………..7

   I.   This Court Should Order ICE to Comply with this Court's Judgment
and Rescind Subclass Members' Detainers……………………………… 7

   II.  This Court Should Sanction ICE for Its Failure to Comply by Ordering
ICE to Move to Dismiss Removal Proceedings for Class Members Arrested
on Enjoined Detainers……………………………………………….8

   III. This Court Should Permit Limited Discovery on ICE's Compliance
with This Court's Injunction……………………………………………...9

CONCLUSION………………………………………………………12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambruso v. Rep. of Sudan*,
    288 F. Supp. 3d 90 (D.D.C. 2017) .................................................. 16

*Blackberry Ltd. v. Typo Prod. LLC*,
    No. 14-CV-00023-WHO, 2014 WL 4136586 (N.D. Cal. Aug. 21,
    2014) ........................................................................................... 16, 17

*California Dep't of Soc. Servs v. Leavitt*,
    523 F.3d 1025 (9th Cir. 2008) ..................................................... 15, 16

*Church of Scientology of Cal. v. United States*,
    920 F.2d 1481 (9th Cir. 1990) ........................................................ 13

*Karouni v. Gonzales*,
    399 F.3d 1163 (9th Cir. 2005) ........................................................ 13

*Mass. Fair Share v. Law Enf't Assistance Admin.*,
    758 F.2d 708 (D.C. Cir. 1985) ........................................................ 13

*Morton v. Ruiz*,
    415 U.S. 199 (1974) ....................................................................... 13

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
    242 F.3d 1163 (9th Cir. 2001) ........................................................ 12

*Nat'l Research Bureau v. Kucker*,
    481 F. Supp. 612 (S.D.N.Y. 1979) ................................................. 13

*Rutherford v. Baca*,
    No. CV 75-04111 DDP, 2009 WL 10653011 (C.D. Cal. Aug. 4,
    2009), *clarified on other grounds on denial of reconsideration*,
    No. CV 75-04111 DDP, 2009 WL 10653010 (C.D. Cal. Sept. 22,
    2009) ........................................................................................... 16, 17

*Matter of S-O-G-*,
    27 I&N Dec. 462 (A.G. 2018) ........................................................ 14

*Salazar v. Buono*,
    599 U.S. 700 (2010).................................................................... 12, 13

*Sanchez v. Sessions*,
   904 F.3d 643 (9th Cir. 2018) ................................................................ 14

*United States v. Latney's Funeral Home, Inc.*,
   41 F. Supp. 3d 23 (D.D.C. 2014) ........................................................ 14

**Other Authorities**

8 C.F.R. § 239.2(c) ................................................................................ 15

Fourth Amendment .......................................................................... 6, 7

Fed. R. Civ. P. 62(c) ............................................................................ 12

*What We Do*, NLETS, https://www.nlets.org/about/what-we-do (last
   visited July 16, 2020) ...................................................................... 10

*What We Do*, NLETS, https://www.nlets.org/about/what-we-do (last
   visited July 17, 2020) ........................................................................ 9

iii

# INTRODUCTION

Over five months ago, on February 5, 2020, this Court issued its Final Judgment holding that ICE violates the Fourth Amendment by issuing immigration detainers to the Probable Cause Subclass (hereinafter "class members") based solely on databases insufficiently reliable to support a determination of probable cause of removability. Dkt. 574. In addition to enjoining further issuance of database detainers to class members, this Court ordered ICE to immediately rescind all such detainers previously issued to the class. *Id.* at 4-5. It has come to Plaintiffs attention that, despite ICE's representations to this Court, ICE has not rescinded the enjoined detainers, resulting in class members continuing to be subject to unlawful arrest and detention.

Plaintiffs now return to this Court seeking enforcement of the Judgment and limited discovery to monitor Defendants' compliance. Plaintiffs respectfully request that this Court (1) order ICE to properly rescind class members' detainers, (2) order ICE to remedy the unlawful arrest suffered by class members whose detainers should have been rescinded but were not, and (3) permit Plaintiffs to conduct limited discovery regarding ICE's compliance with the Judgment.

# FACTUAL BACKGROUND

## I. Procedural History

Following a seven-day bench trial, in September 2019 this Court held that ICE violates the Probable Cause Subclass[1] members' Fourth Amendment rights

---

[1] The Probable Cause Subclass is comprised of all current and future persons who are subject to an immigration detainer issued by an ICE agent located in the Central District of California, where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings and the detainer was issued solely on the basis of electronic database checks. Dkt. 548 at 3 n.1.

1

by subjecting them to immigration detainers[2] "based solely on database searches that rely upon information from sources that lack sufficient indicia of reliability for a probable cause determination for removal." Dkt. 548, at 37, ¶ 33.

In February 2020, this Court issued a Final Judgment ("Judgment") ordering, *inter alia*, "Immigration detainers previously issued against members of the Probable Cause Subclass are declared null and void, and *ICE shall immediately rescind all such detainers*." Dkt. 574 at 4 (emphasis added). This Court also ordered that, "[s]hould ICE move the PERC, or any successor(s) performing the detainer functions of the PERC, to a location outside of the Central District of California" "ICE shall . . . [c]ontinue to be bound by this injunction with respect to the detainer functions of the PERC." *Id.* at 5.

**II.  ICE's Failure to Rescind the Enjoined Detainers**

On March 23, 2020, ICE reported to this Court that it "rescinded 28,659 detainers issued to the Probable Cause Subclass members." Defendants' Notice of Compliance, Dkt. 589 at 1. *See also* Dkt. 589-1 ¶3 (accompanying declaration). The March 23 notice and accompanying declaration, however, do not explain how ICE effectuated the detainer rescission. *See* Dkts. 589, 589-1.

Upon hearing from attorneys for individual class members that their clients' detainers were not in fact rescinded, Plaintiffs' counsel reached out to ICE's counsel and learned that ICE did not actually rescind the enjoined detainers, which, per longstanding ICE policy and practice, requires sending the recipient law enforcement agency ("LEA") a cancelled I-247 form. As a result, LEAs do not appear to know the detainers they previously received from ICE are no longer active and are continuing to honor them.

---

[2] The I-247A immigration detainer form requests its recipient to hold an individual for up to 48 hours, so that ICE may take custody. Declaration of Jennifer Pasquarella ¶13, Exhibit G at 5 (Tr. Exh. 111).

1    ICE policy No. 10074.2 § 5.4 sets forth how detainers are rescinded.

2    Pasquarella Dec. ¶13, Exhibit G at 5 (Tr. Exh. 111) ("ICE Detainer Policy"). It

3    explains that if ICE, after issuing an immigration detainer, for any reason

4    determines it will not act on an immigration detainer, the immigration officer "*must*

5    cancel [it]." *Id.* (emphasis added). For rescission to be effective, "Form I-247A

6    shall be issued to the relevant LEA requesting cancellation of the detainer." *Id.* The

7    I-247A detainer form provides clear instruction to the LEA to cancel the previously

8    issued detainer, stating, at the checkbox near the bottom of the page,  "please cancel

9    the  detainer  related  to  this  alien  previously  submitted  to  you  on

10   _____(date)." Pasquarella Dec. ¶17, Exhibit K (Tr. Exh. 96).

11   It has been ICE, and previously the Immigration and Naturalization

12   Service's ("INS"), policy and practice for decades to rescind immigration detainers

13   by sending the canceled detainer to the recipient LEA. Every detainer form since

14   1997, when the INS first began requesting extended detention on detainers,

15   contains the same checkbox. *See id.* ¶¶14-17, Exhibits H-K (Previous and current

16   I-247 detainer forms as updated in 1997, 2011, 2012, and 2017).

17   Plaintiffs Gonzalez and Chinivizyan's own detainer rescissions, as well as

18   numerous examples admitted as exhibits at trial, demonstrate that this is ICE's

19   method for cancelling detainers. Dkt. 44-1 at 39, 43 (Exhibit D to Third Amended

20   Complaint); Pasquarella Dec. ¶18, Exhibit L (Tr. Exhs. 164, 168, 171, 179, 180,

21   217).

22   As it is ICE's standard practice and policy of rescinding detainers in this

23   manner, it is also the way LEAs are accustomed to receiving and being notified of

24   a cancellation. Indeed, a detainer requesting that an LEA detain a person for extra

25   time cannot be effectively rescinded to comply with the Court's judgment and

26   ensure unlawful detention is avoided if the LEA does not know that detainer is no

27   longer valid and that ICE is no longer requesting the extended detention. Absent

28

1    such knowledge, the LEA may honor the request and subject the individual to the

2    unlawful detention.

3          Rather than follow its own decades-long policy and practice, ICE counsel

4    reported to Plaintiffs that it instead sent out a single generic mass message to

5    undisclosed LEAs over the National Law Enforcement Telecommunications

6    Service ("NLETS").[3] *Id.* ¶6, Exh. A ("ICE did not issue separate notices for each

7    detainer or to each agency.").

8          ICE counsel provided three examples of these NLETS messages, but

9    redacted the headers and otherwise refused to provide Plaintiffs' counsel any

10   information about which agencies the messages were sent to and when,

11   precluding Plaintiffs from independently verifying that the messages were

12   received by the respective LEAs. *Id.* ¶12, Exhibits E-F.  The mass NLETS

13   messages are inscrutable and state only that "Immigration and Customs

14   Enforcement is cancelling I-247 Detainer issued for the subjects listed at the

15   bottom of this message."  *Id.*, Exhibit F. After a multi-paragraph explanation of

16   the lawsuit and injunction, the message provides a laundry list of individuals

17   without explaining that these are individuals are in any particular LEA's custody.

18   Unlike the Form I-247A requesting cancellation, the NLETS messages provide

19   no instruction to the LEAs and conspicuously fail to request the LEAs cancel the

20   existing detainers. *See id.*, Exhibit F. Plaintiffs' counsel asked if ICE had

21   received any indication from LEAs that the messages had been received and

22   understood. Defense counsel likewise refused to provide that information. *See id.*,

23   Exhibit E.

24         This single mass NLETS message is patently insufficient to rescind the

25
26   [3] NLETS is an online information-sharing network for law enforcement agencies
     across the United States and Canada. *What We Do*, NLETS,
27   https://www.nlets.org/about/what-we-do (last visited July 17, 2020). It is not
     clear that every LEA that receives detainers uses NLETS, nor that is possible to
28   receive direct messages through NLETS.

enjoined detainers and ensure that LEAs cancel the detainers they received. Indeed, the form of communication makes ICE's departure from its standard cancellation policy even more suspect, as it appears to be deliberately engineered to avoid LEAs canceling the detainers in their system. LEAs using NLETS may receive numerous messages on NLETS in a given day and the single message is easily overlooked.[4]

### III.   Examples of ICE's Failure to Rescind Enjoined Detainers

Cesar Loza was in the custody of the Orange County Sheriff's Department and subject to an enjoined database detainer issued by the Pacific Enforcement Response Center ("PERC") on January 29, 2019. When he was eligible for release on June 16, 2020, the Orange County Sheriff's Department acted on that enjoined detainer and notified ICE that he was being released—indicating it still believed the detainer to be valid. ICE subsequently arrested him and put him in removal proceedings. Declaration of Jacqueline Dan ¶¶3-6, Exhibit A.

Wilmur Reyes was in the custody of the Ventura County Sheriff's Department and subject to an enjoined database detainer issued by the PERC on July 26, 2019. That same day, the Ventura County Sheriff's Department notified Mr. Reyes that it intended to act on the detainer by notifying ICE of his release date. Declaration of V. Starrett ¶10, Exhibit B. On April 14, 2020, the Ventura Sheriff acted on the enjoined detainer and notified ICE that he was being released—indicating it still believed the detainer to be valid. ICE responded to that

---

[4] NLETS boasts its "operations consist of more than 1.6 billion [data exchange] transactions a year to over 1 million PC, mobile and handheld devices in the U.S. and Canada at 45,000 user agencies and to 1.3 million individual users." *What We Do*, NLETS, https://www.nlets.org/about/what-we-do (last visited July 16, 2020). According to NLETS, therefore, information is exchanged across the network via approximately 4.4 million transactions *per day*. *Id.* (emphasis added).

1    notification, and arrested Mr. Reyes in the restroom of the public area of the jail.

2    *Id.* ¶¶6-7.

3            Jesus Gonzalez was in the custody of the Los Angeles Sheriff's Department

4    and subject to an enjoined database detainer issued by the PERC on September 11,

5    2019.  After he was transferred to state prison, his public defender called the prison

6    to ensure that the detainer was rescinded and learned that there "was no ICE

7    rescission of the detainer in the prison file," in the form of a cancelled Form I-

8    247A or otherwise.  Declaration of Jean Costanza ¶7; Pasquarella Dec. ¶5.

9            After learning from Mr. Gonzalez's public defender that his detainer had

10   not been properly rescinded, Plaintiffs' counsel raised this with ICE. Defense

11   counsel responded by sending a copy of a new detainer purporting to be for Mr.

12   Gonzalez, which had apparently been issued out of the ICE Bakersfield Suboffice

13   on January 6, 2020 with both the database *and* the "pendency of ongoing removal

14   proceedings" boxes checked, despite the fact that Mr. Gonzalez is not in ongoing

15   removal proceedings. Pasquarella Dec. ¶8, Exhibit C; Declaration of Zoë

16   McKinney ¶¶4, 10.[5] Upon receiving this information, Mr. Gonzalez's public

17   defender again called the prison and asked for a copy of the detainer the prison

18   received from ICE. The detainer the prison sent her shows that the Bakersfield

19   Suboffice issued Mr. Gonzalez a *new* biometric detainer on January 6, 2020, but

20   *only* on the basis of database checks. Costanza Dec. ¶7, Pasquarella Dec. ¶9,

21   Exhibit D. That is, the detainer received by the prison does not have the

22   "pendency of ongoing removal proceedings" box checked, as Defense counsel

23   claimed. *Id.*

24

25

26

_____

27   [5] Under ICE's Detainer Policy, the "pendency of ongoing removal proceedings"
     may only be checked when "DHS has issued a charging document and has served
28   the charging document on the alien." Detainer Policy § 5.1.

                                          6

# ARGUMENT

## I.  This Court Should Order ICE to Comply with this Court's Judgment and Rescind Subclass Members' Detainers.

This Court retained "jurisdiction to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this Order and Judgment." Dkt. 574 at 6. That reservation of authority comports with district courts' inherent power to enforce their judgments. *See* Fed. R. Civ. P. 62(c) (courts can issue further orders to ensure compliance with an injunction or earlier orders); *see Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). When it becomes clear that defendants continue to engage in conduct contrary to an injunction, the party who sought the injunction may move the court to issue an order mandating compliance. *Salazar v. Buono*, 599 U.S. 700, 712 (2010) ("A party that obtains a judgment in its favor acquires a judicially cognizable interest in ensuring compliance with that judgment") (quotation marks omitted). When a court acts in equity, it has broad latitude to fashion relief necessary to prevent the infringement of its injunction. *Id.* at 712-13. Indeed, it is a principle of equity that "the spirit and purpose of an injunction, not merely its precise words, . . . must be obeyed." *Nat'l Research Bureau v. Kucker*, 481 F. Supp. 612, 615 (S.D.N.Y. 1979).

This Court specifically ordered ICE to "immediately rescind" all detainers previously issued to Probable Cause Subclass members. Dkt. 574 at 4. Five months later, they have not done so, leaving thousands of class members subject to the very arrest and detention that this Court found unconstitutional. As a detainer is a request to another agency, rescission cannot mean anything other than a request that the other agency cancel the detainer. This is what ICE's policy and practice requires and it is the procedure LEAs are familiar with and expect when ICE rescinds a detainer. Absent such clear communication, LEAs will have

7

no reason to know that the received detainer is no longer valid. ICE must follow its own policy. *See, e.g., Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures"); *Karouni v. Gonzales*, 399 F.3d 1163, 1171 n.11 (9th Cir. 2005); *Church of Scientology of Cal. v. United States,* 920 F.2d 1481, 1487 (9th Cir. 1990) ("an administrative agency is required to adhere to its own internal operating procedures"); *Mass. Fair Share v. Law Enf't Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985) (agencies must follow their own procedures even where the procedural requirement has "not been published in the Federal Register").

Plaintiffs respectfully request that this Court order ICE to rescind the enjoined detainers by following its own policy regarding detainer rescission and immediately issuing Form I-247A detainers requesting cancellation of each class member's detainers. The Court should order ICE to report back to the Court with detailed evidence that ICE has complied with this Court's order.

**II. This Court Should Sanction ICE for Its Failure to Comply by Ordering ICE to Move to Dismiss Removal Proceedings for Class Members Arrested on Enjoined Detainers.**

Where a Court finds a party has failed to comply with a permanent injunction, it "ha[s] wide discretion in fashioning remedial sanctions," "the sole purpose of [which] is to coerce compliance or compensate . . . for losses sustained[.]" *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 23, 35-36 (D.D.C. 2014).

Where ICE arrested a class member because the custodial LEA acted on a detainer that ICE failed to rescind, it is not enough to order ICE to comply with the Judgment and rescind the enjoined detainers moving forward. For many class members, the damage has already been done. They have been unlawfully

8

1    detained because of ICE's failure to rescind their detainers.

2         To remedy this injustice, this Court should order ICE to move to dismiss

3    removal proceedings with prejudice for any individual put into removal

4    proceedings as a result of ICE not rescinding their detainer, and then to provide

5    detailed proof of compliance. *See Sanchez v. Sessions*, 904 F.3d 643, 655 (9th

6    Cir. 2018) (termination of removal proceedings proper where the government

7    agency egregiously violated the individual's constitutional rights in making the

8    arrest); *see also Matter of S-O-G-*, 27 I&N Dec. 462, 466 (A.G. 2018) (dismissal

9    appropriate where the Notice To Appear ("NTA") was "improvidently issued"

10   such that the government cannot sustain charges of removability).

11        Specifically, the Court should order ICE to produce a list of the names, A-

12   numbers, and the LEA to whom the detainer was issued for all 28,659 class

13   members whose detainers should have been properly rescinded. Within that list,

14   this Court should order ICE to identify anyone who ICE placed in removal

15   proceedings since February 6, 2020, and to file motions to dismiss removal

16   proceedings with prejudice for these individuals under 8 C.F.R. § 239.2(c) in

17   immigration court. Such a remedy will help ameliorate the harm caused by ICE's

18   failure to comply and ensure adherence to the injunction going forward.

19   **III.    This Court Should Permit Limited Discovery on ICE's Compliance**

20   **         with This Court's Injunction.**

21        In addition to ICE's failure to rescind the enjoined detainers, evidence

22   suggests ICE may have shifted detainer issuance out of the PERC to other

23   locations, also in violation of the Judgment. Dkt. 574 at 4-5. As noted above,

24   Jesus Gonzalez was subject to an enjoined PERC detainer, but ICE reissued the

25   same detainer from outside the Central District of California (i.e. the Bakersfield

26   Suboffice). Further, ICE detainers received by the City and County of San

27   Francisco by ICE from January 1, 2020 through May 11, 2020 suggest ICE has

28   shifted detainer issuance of database detainers from the PERC to other locations.

9

1   Mainly, all of the detainers received by San Francisco during this time period

2   were from the PERC, except any I-247A detainer with the database box checked

3   was issued by the ICE San Francisco Enforcement and Removal Office ("ERO").

4   Pasquarella Dec. ¶¶18-19; Declaration of Angela Chan ¶¶3-4. According to San

5   Francisco's information, the ICE San Francisco ERO office issued no other I-

6   247A detainers to San Francisco City and County during this period, except

7   database detainers. Pasquarella Dec. ¶19. This suggests that ICE may have

8   shifted the issuance of enjoined detainers from the PERC to other locations in

9   violation of this Court's order. For these reasons, Plaintiffs request permission to

10  conduct discovery on ICE's compliance with the Judgment.

11          This Court's continued jurisdiction and inherent power to enforce its

12  judgment includes the power to grant discovery to determine compliance. *See*

13  *California Dep't of Soc. Servs v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008)

14  ("[A] district court should give careful attention to a request for discovery to

15  establish noncompliance with one of its judgments."); *see also Ambruso v. Rep.*

16  *of Sudan*, 288 F. Supp. 3d 90, 95 (D.D.C. 2017) ("As a general rule, legal victors

17  may engage in broad post-judgment discovery.").

18          "When considering whether to permit discovery prior to resolution of . . . a

19  motion [for compliance], the kind and amount of evidence of noncompliance

20  required to justify discovery is, necessarily, considerably less than that needed to

21  show actual noncompliance. If significant questions regarding noncompliance

22  have been raised, appropriate discovery should be granted." *Id.* at 1034; *see also*

23  *Rutherford v. Baca*, No. CV 75-04111 DDP, 2009 WL 10653011, at *2 (C.D.

24  Cal. Aug. 4, 2009), *clarified on other grounds on denial of reconsideration,* No.

25  CV 75-04111 DDP, 2009 WL 10653010 (C.D. Cal. Sept. 22, 2009) (granting

26  post-judgment compliance discovery and explaining that motion for compliance

27  discovery "is analogous to a Rule 56(f) [2] request . . . and requires '[v]ery little

28  proof of noncompliance'") (quoting Rutter Group Practice Guide: Federal Trials

10

and Evidence ¶ 20:438.3) (alteration in original); *Blackberry Ltd. v. Typo Prod. LLC*, No. 14-CV-00023-WHO, 2014 WL 4136586, at *2 (N.D. Cal. Aug. 21, 2014) (ordering compliance discovery in light of "significant questions of whether [Defendant] has violated the preliminary injunction").

Plaintiffs have easily met this standard here. Plaintiffs seek permission to serve Requests for Production ("RFPs") seeking production of:

(1) All new detainers subsequently issued against any class member who was subject to an enjoined PERC detainer beginning on September 27, 2019.

(2) A dataset showing the number of database detainers issued by Defendants for each month from March 2019 through May 2020, broken down by the issuing ICE office. This data, coupled with the requested detainers in (1), will allow Plaintiffs to assess whether ICE has simply shifted detainer issuance to members of the class (which includes current and future members) outside the Central District of California, instead of halting the practice entirely, as required by the injunction.

(3) Documents necessary to evaluate compliance with the order to rescind detainers and adherence to any further rulings from this Court regarding compliance.

In light of the evidence of non-compliance described above, an order reopening discovery to permit Plaintiffs to serve the limited requests described herein is necessary and appropriate. *See Rutherford*, 2009 WL 10653011, at *3 (granting motion to reopen discovery into medical care and mental health issues in jails where plaintiffs provided evidence of medical care and mental health conditions in jail that may have violated court's orders); *Blackberry Ltd.*, 2014 WL 4136586, at *2 (granting discovery into compliance with preliminary injunction in light of "serious questions" regarding possible violations).

1  **CONCLUSION**

2       For the foregoing reasons, this Court should enforce its Judgment by

3  requiring ICE to serve cancelled I-247A forms for each rescinded detainer,

4  terminate removal proceedings for any class members already arrested by ICE on

5  an enjoined detainer, and provide evidence of its compliance. Separately, this

6  Court should permit the limited discovery Plaintiffs seek to assess Defendants'

7  compliance with prohibition against moving the function to the PERC.

8

9  Dated July 17, 2020                  /s/ Jennifer Pasquarella

10                                        JENNIFER PASQUARELLA

11                                        Counsel for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28