1 | MAYRA B. JOACHIN (SBN 306065)
2 |    *mjoachin@aclusocal.org*
   EVA L. BITRAN (SBN 302081)
3 |    *ebitran@aclusocal.org*
   ACLU FOUNDATION OF SOUTHERN CALIFORNIA
4 | 1313 W 8th Street, Suite 200
   Los Angeles, CA 90017
5 | Telephone: (213) 977-9500
   Facsimile: (213) 977-5299
6 |
7 | Attorneys for Plaintiffs
   (continued on next page)
8 |
9 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| GERARDO GONZALEZ; et al., | Case No. CV 13-04416 AB (FFMx) |
| Plaintiffs, | Honorable André Birotte, Jr. |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT** |
| IMMIGRATION AND CUSTOMS ENFORCEMENT; et al., | |
| Defendants. | Hearing Date: TBD |
| | Time:      10:00 A.M. |
| | Courtroom:   7B |

i

JENNIFER PASQUARELLA (SBN 263241)
  jennie@seattleclemencyproject.org
SEATTLE CLEMENCY PROJECT
20415 72nd Ave South, Suite 1-415
Kent, WA 98032
Phone: (917) 690-2038

BARRETT S. LITT (SBN 45527)
  blitt@mbllegal.com
LINDSAY B. BATTLES (SBN 262862)
  lbattles@mbllegal.com
MCLANE, BEDNARSKI, & LITT
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

CHRIS NEWMAN (SBN 255616)
  newman@ndlon.org
NATIONAL DAY LABOR ORGANIZING NETWORK
1030 S. Arroyo Pkwy, Suite 106
Pasadena, CA 91105
Telephone: (626) 799-2160
Facsimile: (626) 799-3560

MARK M. FLEMING, *pro hac vice*
  mfleming@immigrantjustice.org
RUBEN LOYO, *pro hac vice*
  rloyo@immigrantjustice.org
NATIONAL IMMIGRANT JUSTICE CENTER
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
Telephone: (312) 660-1370
Facsimile:(312) 660-1505

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iv

I.      INTRODUCTION ..................................................................................1

II.     BACKGROUND ....................................................................................2

    A.    Procedural Background....................................................................2

    B.    Settlement Negotiations ..................................................................5

    C.    Settlement Agreement Terms..........................................................6

III.    LEGAL STANDARD............................................................................9

IV.     ARGUMENT ......................................................................................10

    A.    The Settlement Agreement is Fair, Reasonable, and Adequate..............10

    B.    This Court Should Certify the Proposed Settlement Class Because It
          Satisfies the Requirements of Rule 23(a) .............................................13

    C.    This Court Should Set the Final Hearing on the Settlement Agreement. 17

V.      CONCLUSION ...................................................................................18

CERTIFICATE OF COMPLIANCE………………………………………………20

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                   **Page(s)**

3

4

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018)......................................................14, 15, 17

5

*Chan v. Sutter Health Sacramento Sierra Region*,
    2016 WL 7638111 (C.D. Cal. June 9, 2016)...................................................18

6

7

*Corley v. Google, Inc.*,
    316 F.R.D. 277 (N.D. Cal. 2016)...................................................................16

8

9

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................16

10

11

*Gonzalez v. U.S. Immigr. and Customs Enf't*,
    975 F.3d 788 (9th Cir. 2020) ................................................................*passim*

12

13

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................17

14

15

*Lilly v. Jamba Juice Co.*,
    2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ..............................................18

16

17

*Makowski v. United States*,
    27 F.Supp.3d 901(N.D. Ill. 2014) .................................................................13

18

19

*Mayorov v. United States*,
    84 F.Supp.3d 678 (N.D. Ill. 2015) ...............................................................14

20

21

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..............................................................9, 12, 14

22

23

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................9, 12

24

25

*Padilla v. Whitewave Foods Co.*,
    2021 WL 4902398 (C.D. Cal. May 10, 2021).............................................18

26

27

*Rodriguez v. Bumble Bee Foods, LLC*,
    2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) ..............................................18

28

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................11

*Roy v. Cnty. of Los Angeles*,
    2017 WL 2559616 (C.D. Cal. June 12, 2017).................................3, 4, 5, 13

*Stathakos v. Columbia Sportswear Co.*,
    2018 WL 582564 (N.D. Cal. Jan. 25, 2018) ..................................................18

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ......................................................................17

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..........................................................................10

*In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit*
    *Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014).............................................................*passim*

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................16

*Walters v. Vitamin Shoppe Indus.*,
    2022 WL 358404 (D. Or. Feb. 7, 2022)........................................................18

**Statutes**

8 U.S.C. § 1357(a)(2) ............................................................................................3, 4

**Rules**

Fed. R. Civ. P. 23(a)(2) ..........................................................................................16

Fed. R. Civ. P. 23(a)(3) ..........................................................................................16

Fed. R. Civ. P. 23(b)(2) ..................................................................................2, 6, 18

Fed. R. Civ. P. 23(e)......................................................................................1, 9, 18

Fed. R. Civ. P. 23(e)(1) ..........................................................................................18

Fed. R. Civ. P. 23(e)(2) ............................................................................................9

**Other Authorities**

5 *Moore Federal Practice*, § 23.85[2][b]................................................................11

I.    **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Gerardo Gonzalez and Simon Chinivizyan ("Plaintiffs"), on behalf of themselves and all members of the Settlement Class,[1] and Defendants U.S. Immigration and Customs Enforcement ("ICE"), ICE Deputy Director and Senior Official Performing the Duties of the Director Patrick J. Lechleitner, ICE Los Angeles Interim Field Office Director Michael V. Bernacke, and ICE Law Enforcement Support Center Director Christopher Graupe ("Defendants" and, with Plaintiffs, "the Parties"), seek approval of the settlement agreement ("Settlement Agreement") reached by the Parties and fully executed on November 22, 2024. Settlement Agreement, Ex. 1. The Settlement Agreement requires ICE to comply with certain procedures when issuing Box 3 or Box 4 ICE Detainers[2] from the Central District of California, where the ICE Detainer is not based upon a final order of removal, deportation, or exclusion or Ongoing Removal Proceedings.

The Settlement Agreement was reached following three years of negotiations. It provides material, prospective relief to the Settlement Class by requiring neutral review of probable cause determinations underlying any Box 3 or Box 4 ICE Detainers to be conducted within 48 hours of issuance of an ICE Detainer against a Settlement Class member, with limited exceptions. The Settlement Agreement also contains investigative, training and reporting requirements should ICE decide to issue Box 3 and Box 4 Detainers to class

---

[1] Capitalized terms shall have the same meaning as provided in the Settlement Agreement.
[2] See the Settlement Agreement for the full definition of Box 3 ICE Detainer and Box 4 ICE Detainer. Settlement Agreement, Ex. 1, at 4–5. In summary, a Box 3 ICE Detainer is based solely on federal database checks and a Box 4 ICE Detainer is based on an interview of the individual or a review of the person's A-file.

1

members, as well as revisions to the ICE Detainer form and FAQs. Defendants are under no obligation to create a neutral review process if they do not issue Box 3 or Box 4 Detainers to class members.

As discussed below, the Parties have determined that the Settlement Agreement is fair, reasonable, and adequate to Settlement Class members and warrants approval by this Court. In accordance with Federal Rule of Civil Procedure 23(a), (b)(2), and (e)(2), the Parties respectfully request that this Court certify the Settlement Class and schedule a hearing to approve the Settlement Agreement.

## II.    BACKGROUND

### A.  Procedural Background

Plaintiffs filed a class action complaint on June 19, 2013, challenging ICE's practice of issuing immigration detainers without probable cause or a prompt, neutral probable cause determination in violation of the Fourth Amendment and federal law. *See* Compl., ECF No. 1. They sought class certification and declaratory, injunctive, and habeas corpus relief.

On September 9, 2016, the District Court certified a Plaintiff class and two subclasses under Federal Rule of Civil Procedure 23(b)(2):

(1) the Judicial Determination Class, consisting of all current and future persons who are subject to an immigration detainer issued by an ICE agent located in the Central District of California, where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings, and limited to those detained for more than 48 hours;

(2) the Probable Cause Subclass, consisting of all current and future persons who are subject to an immigration detainer issued by an ICE agent

located in the Central District of California based solely on electronic

database checks, where the detainer is not based upon a final order of

removal signed by an immigration judge or the individual is not subject to

ongoing removal proceedings; and

(3) the Statutory Subclass, consisting of all current and future persons who

are subject to an immigration detainer issued by an ICE agent located in

the Central District of California, where the detainer is not based upon a

final order of removal signed by an immigration judge or the individual is

not subject to ongoing removal proceedings, for whom ICE did not issue

an administrative warrant of arrest at the time it issued the immigration

detainer.

Order Pls.' Mot. Class Certification, ECF No. 96; *see also* Settlement Agreement,

Ex. 1, at 1–2.

On June 12, 2017, the District Court granted partial summary judgment for

Defendants on the Judicial Determination Class's claim that Defendants' failure

to provide a neutral probable cause determination within forty-eight hours of

arrest violates the Fourth Amendment ("*Gerstein* Claim"). *Roy v. Cnty. of Los*

*Angeles*, No. 12-09012, 2017 WL 2559616, at *1 (C.D. Cal. June 12, 2017),

*rev'd and vacated sub nom. Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d

788 (9th Cir. 2020), Order Mot. Summ. J., ECF No. 264.[3]

On February 7, 2018, the Court granted partial summary judgment for

Plaintiffs on two claims: (1) the Statutory Subclass's claim that Defendants'

policy of issuing detainers without either an administrative warrant or an

assessment of flight risk violates 8 U.S.C. § 1357(a)(2); and (2) the Probable

Cause Subclass's claim that Defendants' policy of issuing detainers based solely

---

[3] The *Gonzalez* class action was consolidated with the *Roy* class action for pre-
trial purposes. ECF No. 95. The class actions were not officially deconsolidated
until after the trial in *Gonzalez*. *Roy,* ECF No. 590.

on evidence of foreign birth and failure to find a match in federal immigration databases violates the Fourth Amendment. *Roy,* Order Mot. Dismiss & Mot. Summ. J., ECF No. 346. The District Court denied Plaintiffs' Motion for Summary Judgment as to the Probable Cause Subclass's claim that detainers issued based solely on database checks violates the Fourth Amendment, finding a factual dispute as to the reliability of ICE's use of its databases to establish probable cause. *Id.*

In May 2019, the District Court conducted a seven-day trial. The District Court issued a final judgment in February 2020 in favor of Plaintiffs on four claims: (1) the Probable Cause Subclass's claim that Defendants violate the Fourth Amendment by issuing detainers for Probable Cause Subclass members based solely on database checks that rely upon information from sources that lack sufficient indicia of reliability for a probable cause determination for removal (hereinafter, "Database Claim"); (2) the Probable Cause Subclass's claim that evidence of foreign place of birth and no match in a federal immigration database does not establish probable cause of alienage and removability under the Fourth Amendment; (3) the Probable Cause Subclass's claim that Defendants violate the Fourth Amendment by issuing detainers to state and local law enforcement agencies in states that do not expressly authorize civil immigration arrests in state statute; and (4) the Statutory Subclass's claim that Defendants violate 8 U.S.C. § 1357(a)(2) by issuing detainers without either an administrative warrant or determining that a person "is likely to escape before a warrant can be obtained for [their] arrest." *Roy*, J. at 2–3, ECF No. 574 (alteration in original). The District Court also entered two injunctions. The first prohibited Defendants from issuing detainers to Probable Cause Subclass members based on databases alone ("the Database Injunction"). *Id.* at 4–5. The second prohibited Defendants from issuing detainers to the Probable Cause Subclass members in states that do not expressly authorize civil immigration arrests ("the State Authority Injunction"). *Id.*

In February 2020, Defendants appealed the District Court's entry of the two injunctions and the court's certification of the Probable Cause subclass. *Roy*, ECF No. 578. Plaintiffs cross-appealed and sought review of the District Court's June 2017 Order granting partial summary judgment for Defendants on Plaintiffs' *Gerstein* claim. The U.S. Court of Appeals for the Ninth Circuit issued an opinion in September 2020: (1) affirming the district court's class certification; (2) reversing and vacating the State Authority Injunction; (3) reversing and vacating the Database Injunction, and remanding to the district court for further consideration of the Database Claim; and (4) reversing and vacating summary judgment for Defendants on the *Gerstein* Claim, and remanding to the district court for further consideration of the claim in light of Defendants' change in policy to require an administrative warrant accompany all detainers. *Gonzalez v. U.S. Immigr. and Customs Enf't*, 975 F.3d 788 (9th Cir. 2020).

In October 2021, the District Court ordered the Parties to attempt to settle this case and then stayed further proceedings pending settlement negotiations. Order Joint Stip., ECF No. 155; 161. To facilitate good faith negotiations, Defendants agreed to adhere to the vacated Database Injunction while settlement negotiations were on-going, which in effect means that there should be no new Settlement Class members as of the past three years. Order Joint Stip., ECF No. 160.

## B.  Settlement Negotiations

The Parties reached the Settlement Agreement after three years of extensive, arms-length negotiations. The Parties began settlement conversations in November 2021, participating in six settlement conferences with Magistrate Judge Beeler, scores of conference calls between the Parties, and exchanging numerous rounds of proposals over these past years.

The terms and conditions of the Settlement Agreement are fair, reasonable,

and adequate. The Agreement provides material relief to the Settlement Class, brings closure to a lengthy, multi-year litigation, and reduces the need for additional protracted and costly litigation.

## C.  Settlement Agreement Terms

The terms of the Settlement Agreement, as set forth in **Exhibit 1**, are summarized below:

- **Settlement Class:** The Parties have agreed to streamline the certified Rule 23(b)(2) class to eliminate the confusion regarding the interplay between the certified main class and subclasses, to adopt terminology consistent with the ICE Detainer form and practices, and to clarify that the Detainer Functions of the Pacific Enforcement Response Center ("PERC"), located within the Central District of California, are subject to the Settlement Agreement. The Settlement Class is defined as: "All current and future individuals who are subject to a Box 3 or a Box 4 ICE Detainer, where the ICE Detainer is issued from a location within the Central District of California or where the ICE Detainer was issued under the Detainer Functions of the PERC regardless of where the ICE Detainer was issued." Settlement Agreement, Ex. 1, at 8. The Settlement Class does not include individuals who are subject to an ICE Detainer issued based upon a final order of removal, deportation, or exclusion or Ongoing Removal Proceedings.[4] The Settlement Agreement also does not impact ICE's use of Requests for Notification, such as Form I-247G or Form I-247N.

---

[4] For clarity, ICE Detainers issued based upon a final order of removal, deportation, or expulsion or Ongoing Removal Proceedings are Box 1 or Box 2 ICE Detainers and not subject to this Settlement Agreement.

- **Neutral review of ICE probable cause determinations within 48 hours of the issuance of a Box 3 or Box 4 ICE Detainer:** If ICE issues a Box 3 or Box 4 ICE Detainer against a Settlement Class member, ICE must present the ICE Detainer for neutral review of the underlying probable cause determination. Absent extraordinary circumstances, neutral review will be completed within 48 hours (including weekends and holidays) of the issuance of the ICE Detainer against a Settlement Class member, with limited exceptions regarding Settlement Class members who have three months or longer remaining on a prison sentence in which case neutral review will be completed within 14 days. If Defendants choose to issue Box 3 or Box 4 Detainers, Defendants have agreed to house Neutral Reviewers, who must meet certain qualifications and training, within the Department of Homeland Security ("DHS") headquarters, and the decision-making of such Neutral Reviewers shall be independent from ICE.

  If the Neutral Reviewer does not concur with ICE's probable cause determination or neutral review is not completed within the required timeframe, the Settlement Agreement establishes a series of coordinated procedures to ensure that the law enforcement agency holding the Settlement Class member is alerted that it may not rely on the issued ICE Detainer and that ICE timely cancels the ICE Detainer against the Settlement Class member. In the event the Settlement Class member has been taken into ICE physical custody, the Settlement Agreement provides alternative remedies depending on the circumstances of the Settlement Class member's ICE custody status.

- **Specific investigative procedures for issuing Box 3 or Box 4 ICE Detainers against Settlement Class members:** Before issuing a Box 3

or Box 4 ICE Detainer against a Settlement Class member, ICE must complete certain investigative procedures, including checking specified databases, creating a Probable Cause Statement, and then submitting the ICE Detainer, Probable Cause Statement, and databases' results for neutral review.

- **Instructions to refrain from issuing a Box 3 ICE Detainer against Settlement Class members under certain circumstances:** ICE has agreed to not issue a Box 3 ICE Detainer against a Settlement Class member in certain circumstances where ICE has sufficient time and access to either interview the Settlement Class member or review the member's A-file, as well as circumstances where the federal databases do not contain information regarding the member, contain inconsistent immigration status information, or contain information that indicate the member might be a U.S. citizen or serviced in the U.S. military. In these circumstances, ICE has agreed to conduct an interview of the Settlement Class member or review their A-file and issue a Box 4 ICE Detainer, if appropriate.

- **Implementation procedures:**
  - The Settlement Agreement requires:
    - Amendments to ICE's Detainer form; and
    - Posting Amendments to ICE's Frequently Asked Questions regarding ICE Detainers.
  - Should Defendants issue Box 3 and Box 4 Detainers to class members, the Settlement Agreement also requires:
    - Training for Neutral Reviewers on a list of identified topics;
    - Training for ICE Officers who would be issuing Box 3 or Box

4 ICE Detainers against Settlement Class members; and

o    Reporting of specific, enumerated information every six months about all Box 3 and Box 4 ICE Detainers issued against Settlement Class members and all Immigration Alien Reponses ("IARs") that were assigned or routed to the PERC, among other requirements.

## III.  LEGAL STANDARD

In the Ninth Circuit, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) (hereinafter "*In re Toys R-Us*") (quoting *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008)); *see also Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.").

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement of the claims, issues, or defenses of a certified class. The court reviewing the settlement proposal must determine whether it is "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000); *see also* Fed. R. Civ. P. 23(e)(2) (listing factors to consider). The court's role in reviewing a proposed class action settlement is to "examine the settlement for fairness and adequacy" and is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

reasonable and adequate to all concerned." *In re Toys R-Us*, 295 F.R.D. at 449 (first quoting *Vaughns v. Bd. of Educ. of Prince George's Cnty.*, 18 F.Supp.2d 569, 578 (D. Md. 1998); and then quoting *Officers for Just.*, 688 F.2d at 625).

## IV.    ARGUMENT

### A.  The Settlement Agreement is Fair, Reasonable, and Adequate.

This Court should approve the Settlement Agreement because it "is fair, reasonable and adequate to all concerned." *In re Toys R-Us*, 295 F.R.D. at 449. When assessing the fairness of a settlement agreement, courts in the Ninth Circuit consider various factors and balance: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.* at 450 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). This list is non exhaustive, and a reviewing Court need not find that all factors were satisfied. "[D]ifferent factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).

The Settlement Agreement here is fair, reasonable, and adequate to all concerned. It was reached after extensive, arms-length negotiations that carefully considered the strength of Plaintiffs' case; the risk of lengthy, protracted and complex litigation should this decade-long case continue; the risk of maintaining class action status throughout trial; the stage of the proceedings; and the experience and views of Plaintiffs' Counsel.

Additionally, the Settlement Agreement is a result of many conversations and conferences between the Parties and with the Court and thus entitled to a

presumption of fairness. *See generally, In re Toys R-Us*, 295 F.R.D. at 450 (concluding that the settlement was "entitled to a presumption of fairness" where the parties held a "number of mediations"); *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). The Parties began settlement discussions three years ago, conferred numerous times, and exchanged multiple rounds of proposals to negotiate each detail of the Settlement Agreement. The Parties also participated in six mediation conferences with the assistance of Magistrate Judge Beeler, provided ongoing status updates to this Court, and solicited this Court's assistance when disputes arose.

For the reasons discussed below, Plaintiffs respectfully request that this Court approve the Settlement Agreement.

### 1.  Strength of Plaintiffs' case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against [that which is] offered in the settlement." 5 *Moore Federal Practice,* § 23.85[2][b] (Matthew Bender 3d. ed.). First, the strength of Plaintiffs' claims, balanced against what is offered in the Settlement Agreement, weighs in favor of approving the Settlement Agreement. Plaintiffs prevailed upon their statutory claims at the district court. They also succeeded in their *Gerstein* claim at the Ninth Circuit, but the panel remanded the claim to the district court to consider the effect of ICE's new policy of issuing administrative warrants with detainers. The Parties have differing views of Plaintiffs' likelihood of success on this claim. As described above, the Settlement Agreement provides "fair, reasonable and adequate" relief to Settlement Class members on these claims without the need for continued litigation. *In re Toys R-Us*, 295 F.R.D. at 449 (internal quotation marks omitted).

### 2.  Risk of lengthy, protracted and complex litigation

Second, the Settlement Agreement is also reasonable because it avoids lengthy and protracted litigation if the case continues. This case was remanded to the district court for further fact-finding and could result in a retrial of at least the Database Claim. Plaintiffs anticipate needing to propound additional discovery for at least that claim. Continuing to litigate this case is thus likely to require "substantial additional risk, discovery, time, and expense." *Id.* at 451 (internal quotation marks omitted). This lengthy litigation would create uncertainties for Plaintiffs, and result in significant delays before Plaintiffs obtain any relief. The expected expenses and length of continued litigation are "considered in evaluating the reasonableness of [a] settlement" and underscore that this Settlement Agreement is reasonable. *Id.* at 452 (alteration in original); *see also In re Mego*, 213 F.3d at 458; *Officers for Just.*, 688 F.2d at 626. The Settlement Agreement addresses the most problematic aspects of Plaintiffs' Database Claim.

### 3. Risk of maintaining class action status and obtaining classwide injunctive relief

Third, at the Ninth Circuit, Defendants challenged the Named Plaintiffs' continued ability to represent the certified class and the availability of certain class-wide equitable relief. *Gonzalez*, 975 F.3d at 803–15 (9th Cir. 2020). While Plaintiffs prevailed on both issues before the Ninth Circuit, there remains a risk that further developments in the caselaw could pose risks to the ultimate relief to the class.

### 4. Stage of the proceedings and extent of discovery

Fourth, the stage of the proceedings and discovery completed support approving the Settlement Agreement. Since filing this case in 2013, Plaintiffs conducted extensive discovery, fully briefed their claims on summary judgment, participated in a seven-day trial with hundreds of pages of post-trial briefing, and then briefed an appeal on the majority of claims in the case. Through that

process, Plaintiffs' Counsel developed a robust understanding of ICE's detainer policies and practices. Plaintiffs' Counsel relied on their knowledge of these policies and practices when negotiating the Settlement Agreement and deem the settlement terms fair, adequate, and reasonable. The Court should approve the Settlement Agreement for these reasons, as "it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *In re Toys R-Us*, 295 F.R.D. at 454 (internal quotation marks omitted).

### 5.  The experience and views of Plaintiffs' Counsel

Fifth, this Court should give "'[t]he recommendations of plaintiffs' counsel . . . a presumption of reasonableness.'" *Id.* at 455 (quoting *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979). Plaintiffs' Counsel have decades of experience litigating complex civil rights cases, including representing other classes and individual noncitizens subjected to ICE detainers. *See Roy*, Litt Decl., ECF No. 152-2 (compiling list of cases showing Plaintiffs' Counsel's substantial experience in immigration law and class action litigation); Order Mot. Class Certification, ECF No. 96 at 30–31 (finding that the *Gonzalez* Plaintiffs' Counsel adequately represent the class); *see also Makowski v. United States*, 27 F.Supp.3d 901(N.D. Ill. 2014) (detainer-related lawsuit litigated by Plaintiffs' Counsel); *Mayorov v. United States*, 84 F.Supp.3d 678 (N.D. Ill. 2015) (same). They are skilled attorneys with sufficient expertise to assess the fairness and reasonableness of a proposed settlement. Plaintiffs' Counsel negotiated the Settlement Agreement at arms-length. The Settlement Agreement provides significant benefits to the Settlement Class.

### B.    This Court Should Certify the Proposed Settlement Class Because It Satisfies the Requirements of Rule 23(a)

A Court's "threshold task in determining whether to certify a class for

settlement purposes is to examine whether the four requirements of Rule 23(a) are met." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). Rule 23(a) requires that the class be so numerous as to render "joinder of all members . . . impracticable", for there to be "questions of law or fact common to the class", for the "claims or defenses [to be] typical" of the class, and for the named representatives to "fairly and adequately protect the interests of the class." *In re Mego*, 213 F.3d at 462 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997)); *see also* Fed. R. Civ. P. 23(a).

For settlement purposes, Plaintiffs seek to streamline the certified classes in this case to consist of "All current and future individuals who are subject to a Box 3 or a Box 4 ICE Detainer, where the ICE Detainer is issued from a location within the Central District of California or where the ICE Detainer was issued under the Detainer Functions of the PERC regardless of where the ICE Detainer was issued." Settlement Agreement, Ex. 1, at 8. The Settlement Class does not include individuals who are subject to an ICE Detainer issued based upon a final order of removal, deportation, or exclusion or Ongoing Removal Proceedings. *Id.* The Settlement Class encompasses all class members who were previously certified by this Court as the Judicial Determination Class (the main class in this matter), which consists of all current and future persons who are subject to an immigration detainer issued by an ICE agent located in the Central District of California, where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings, and limited to those detained for more than 48 hours. The variations in language for the Settlement Class compared to the original class definition reflect the terminology used in the Settlement Agreement, is consistent with the ICE Detainer form and practice, and are intended to improve implementation of the Agreement. All members of the Judicial Determination Class (and its subclasses) are members of the Settlement Class.

14

This Court should certify the Settlement Class because it satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements, as discussed below. Fed. R. Civ. P. 23(a).

### 1. Numerosity

Rule 23(a)(1) requires that the class must be "'so numerous that joinder of all members is impracticable.'" *In re Anthem*, 327 F.R.D. at 307 (quoting Fed. R. Civ. P. 23(a)(1)). This Court already has determined that Plaintiffs have satisfied numerosity. Order Mot. Class Certification, ECF No. 96. This requirement is easily met going forward by the number of Settlement Class members that would be subject to Box 3 or Box 4 ICE Detainers issued from the Central District of California but for Defendants' representation of voluntary cessation pending these settlement negotiations. Pls. Reply Mot. Class Certification, ECF No. 60. Defendants reported to the Ninth Circuit in their appeal that ICE's PERC office, located in the Central District, "issued nearly 50,000 detainers" in FY 2019 alone. *Gonzalez*, 975 F.3d at 800. Plaintiffs can comfortably estimate that thousands of Settlement Class members would be subjected to Box 3 or Box 4 ICE Detainers each year while the Settlement Agreement is in effect. Based on this number, numerosity will be more than satisfied here over the duration of the Settlement Agreement. While there is no precise amount for when joinder becomes impracticable, "a class of 40 or more members" usually is enough. *Corley v. Google, Inc.*, 316 F.R.D. 277, 290 (N.D. Cal. 2016) (internal quotation marks omitted). Furthermore, joinder is feasibly impractical here where Box 3 and Box 4 ICE Detainers are issued to Settlement Class members throughout the year, and the individuals subjected to the detainers are held in different facilities across at least 42 states. *Gonzalez*, 975 F.3d at 799.

### 2. Commonality

A class may be certified where there "are questions of law or fact common

15

to the class." Fed. R. Civ. P. 23(a)(2). In the Ninth Circuit, this requirement is "construed permissively, and [a]ll questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (internal quotation marks omitted) (alterations in original). "[E]ven a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). This Court already found commonality [ECF No. 96] and the Ninth Circuit affirmed recognizing that Plaintiffs allege "a system-wide practice or policy that affects all of the putative class members." *Gonzalez*, 975 F.3d at 808. ICE Detainers issued in violation of the Settlement Agreement will raise common questions of law and fact applicable to all Settlement Class members.

### 3. Typicality

The Settlement Class also satisfies the typicality requirement. This Court has already found typicality [ECF No. 96] and the Ninth Circuit affirmed. *Gonzalez*, 975 F.3d at 809–12. The named representatives raise claims and defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Wherever Box 3 or Box 4 ICE Detainers are issued by ICE from the Central District of California, the claims of the class members will "arise[] from the same course of events, and each class member [will make] similar legal arguments to prove the defendant's liability." *In re Anthem.*, 327 F.R.D. at 309 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). Their interests in raising such defenses and proving the defendant's liability "align[] with the interests of the class" and demonstrate that the proposed class satisfies the typicality requirement. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

### 4. Adequacy

Finally, the Settlement Class meets Rule 23's requirement of adequacy of

16

representation. This Court has already determined the adequacy of representation prong has been satisfied. ECF No. 96. Pursuant to Rule 23(a)(4), named representatives are required to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This assessment removes any "conflicts of interest between named parties and the class they seek to represent." *In re Anthem,* 327 F.R.D. at 309. Courts assessing adequacy of representation examine two questions: 1) whether the named plaintiffs and their counsel have conflicts of interest with other class members; and 2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Id.* (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)). Here, neither the named representatives nor Plaintiffs' Counsel have conflicts of interest with absent class members. Additionally, Plaintiffs' Counsel have significant experience representing class actions, particularly with respect to ICE's detainer practice, and advocating for the interests of all class members. Plaintiffs' Counsel have been litigating the case vigorously for over a decade and intend to monitor ICE's compliance with the Settlement Agreement through the Agreement's reporting requirements.

### C. This Court Should Set the Final Hearing on the Settlement Agreement.

The Parties request that this Court set a final hearing for approval of the Settlement Agreement and forgo the discretionary Rule 23(e)'s notice to class members. Fed. R. Civ. P. 23(e)(1) (describing whether to provide notice is within the Court's discretion). Courts in the Ninth Circuit consistently have held that notice under Rule 23(e) is not required for settlements of Rule 23(b)(2) class actions providing for "injunctive relief only." *Stathakos v. Columbia Sportswear Co.*, 2018 WL 582564, at *3–4 (N.D. Cal. Jan. 25, 2018) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required."); *see also Lilly v. Jamba Juice*

*Co.*, 2015 WL 1248027, at *8–9 (N.D. Cal. Mar. 18, 2015); *Chan v. Sutter Health Sacramento Sierra Region*, 2016 WL 7638111, at *13–14 (C.D. Cal. June 9, 2016); *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *10 (S.D. Cal. Apr. 24, 2018); *Padilla v. Whitewave Foods Co.*, 2021 WL 4902398, at *4 (C.D. Cal. May 10, 2021); *Walters v. Vitamin Shoppe Indus.*, 2022 WL 358404, at *1 (D. Or. Feb. 7, 2022).

Notice is particularly not necessary here where Defendants agreed to abide by the vacated Database Injunction while settlement negotiations were ongoing, which in effect means that ICE should not have issued any Box 3 or Box 4 ICE Detainers from the Central District of California for the past three years. And, at the time this Court issued the Database Injunction in February 2020, Defendants made efforts to alert law enforcement agencies regarding the Database Injunction's impact on the ICE Detainers lodged against affected class members in their custody. ECF No. 103. Accordingly, to the extent that there are any Settlement Class members at this moment, they are spread across detention facilities in 42 states and would be exceedingly difficult to notify. The Parties thus respectfully request that this Court schedule a hearing to assess the fairness and reasonableness of the Settlement Agreement and grant final approval.

## V.    CONCLUSION

For the reasons discussed above, the Parties respectfully request that this Court:

    (1) Schedule a prompt hearing for approval of the Settlement Agreement;

    (2) Certify the Settlement Class;

    (3) Grant final approval of the Settlement Agreement; and

    (4) Retain continuing and exclusive jurisdiction over the Parties and the Settlement Agreement.

1
2
3                                          Respectfully submitted,
4
5    Dated: November 25, 2024          /s/ *Mark Fleming*
6                                          MARK FLEMING
7
8                                          MARK M. FLEMING, *pro hac vice*
                                           NATIONAL IMMIGRANT JUSTICE CENTER
9                                          111 W. Jackson Blvd., Suite 800
                                           Chicago, IL 60604
10                                         (Counsel for Plaintiffs)
11
12
13
14   Dated: November 25, 2024          /s/ *Elissa Fudim*
15                                         ELISSA P. FUDIM
16
17                                         ELISSA P. FUDIM, *Trial Attorney*
18                                         Office of Immigration Litigation
19                                         United States Department of Justice
                                           Post Office Box 868, Ben Franklin Station
20                                         Washington, D.C., 20044
21                                         (Counsel for Defendants)
22
23
24
25
26
27
28

19

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,293 words, which complies with the word limit of L.R. 11-6.1.

/s/ Mark Fleming

MARK FLEMING

NATIONAL IMMIGRATION JUSTICE CENTER