1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

GERARDO GONZALEZ; et al.,

Plaintiffs,

vs.

IMMIGRATION AND CUSTOMS
ENFORCEMENT; et al.,

Defendants.

Case No. CV 13-04416 AB (FFMx)

**CLASS ACTION SETTLEMENT**
**AGREEMENT AND RELEASE**

Honorable André Birotte, Jr.

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs in *Gonzalez v. ICE*, Gerardo Gonzalez and Simon Chinivizyan, on behalf of themselves and all members of the Settlement Class (collectively, "Gonzalez Plaintiffs") and Defendants U.S. Immigration and Customs Enforcement (ICE), ICE Deputy Director and Senior Official Performing the Duties of the Director Patrick J. Lechleitner, ICE Los Angeles Interim Field Office Director Michael V. Bernacke, and ICE Law Enforcement Support Center Director Christopher Graupe (collectively, "Defendants" and, with Plaintiffs, "the Parties"), through their counsel, enter into this Class Action Settlement Agreement and Release ("Agreement") as of the date it is executed by all Parties (the "Agreement Date") and effective 90 days after approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), as set forth in Section IX below.

**WHEREAS:**

On June 19, 2013, Plaintiffs commenced a civil action on behalf of themselves and all others similarly situated challenging their ongoing and imminent detention on immigration detainers, captioned *Gonzalez v. ICE*, United States District Court for the Central District of California ("the District Court"), Case No. 13-cv-4416, and sought class certification, appointment of class counsel, and declaratory, injunctive, and habeas corpus relief.

On September 9, 2016, the District Court certified three Plaintiff classes under Federal Rule of Civil Procedure 23(b)(2): (1) the **Judicial Determination Class**, consisting of all current and future persons who are subject to an immigration detainer issued by an ICE agent located in the Central District of California, where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings, and limited to those detained for more than 48 hours; (2) the **Probable Cause Subclass**, consisting of all current and future persons who are

1

subject to an immigration detainer issued by an ICE agent located in the Central District of California based solely on electronic database checks, where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings; and (3) the **Statutory Subclass**, consisting of all current and future persons who are subject to an immigration detainer issued by an ICE agent located in the Central District of California, where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings, for whom ICE did not issue an administrative warrant of arrest at the time it issued the immigration detainer.

On June 12, 2017, the District Court granted partial summary judgment for Defendants on the Judicial Determination Class's claim that Defendants' failure to provide a neutral probable cause determination within forty-eight hours of arrest violates the Fourth Amendment ("Plaintiffs' *Gerstein* Claim").

On February 7, 2018, the District Court granted partial summary judgment for Plaintiffs on two claims: (1) the Statutory Subclass's claim that Defendants' policy of issuing detainers without either an administrative warrant or an assessment of flight risk violates 8 U.S.C. § 1357(a)(2) and (2) the Probable Cause Subclass's claim that Defendants' policy of issuing detainers based solely on evidence of foreign birth and failure to find a match in federal immigration databases violates the Fourth Amendment. The District Court denied Plaintiffs' Motion for Summary Judgment as to the Probable Cause Subclass's claim that detainers issued based solely on database checks violates the Fourth Amendment, finding a factual dispute as to the reliability of ICE's use of its databases to establish probable cause.

Between May 7 and May 16, 2019, the District Court conducted a seven-day trial.

On February 5, 2020, the District Court entered a final judgment in favor

of Plaintiffs on four claims: (1) the Probable Cause Subclass's claim that Defendants violate the Fourth Amendment by issuing detainers for Probable Cause Subclass members based solely on database checks that rely upon information from sources that lack sufficient indicia of reliability for a probable cause determination for removal (hereinafter, "Plaintiffs' Database Claim"); (2) the Probable Cause Subclass's claim that evidence of foreign place of birth and no match in a federal immigration database does not establish probable cause of alienage and removability under the Fourth Amendment; (3) the Probable Cause Subclass's claim that Defendants violate the Fourth Amendment by issuing detainers to state and local law enforcement agencies in states that do not expressly authorize civil immigration arrests in state statute and (4) the Statutory Subclass's claim that Defendants violate 8 U.S.C. § 1357(a)(2) by issuing detainers without either an administrative warrant or determining that a person "is likely to escape before a warrant can be obtained for [their] arrest." The District Court also entered two injunctions. The first prohibited Defendants from issuing detainers to Probable Cause Subclass members based on databases alone ("the Database Injunction"). The second prohibited Defendants from issuing detainers to the Probable Cause Subclass members in states that do not expressly authorize civil immigration arrests ("the State Authority Injunction").

On February 14, 2020, Defendants filed a notice of appeal to the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit"). Defendants appealed the District Court's entry of the State Authority and Database Injunctions, as well as the District Court's Certification of the Probable Cause Subclass. Plaintiffs filed a cross appeal, seeking review of the District Court's June 12, 2017 order granting partial summary judgment for Defendants on Plaintiffs' *Gerstein* Claim.

On September 11, 2020, the Ninth Circuit issued an opinion affirming in part, reversing and vacating in part, and remanding.

On October 29, 2021, following a status conference, the District Court

stayed further proceedings until January 31, 2022, ordering the Parties to focus their efforts during that time on attempting to settle this matter. The District Court has extended the stay multiple times over the ensuing nearly three years.

The Parties have conducted extensive discussions and arms-length negotiations with a view toward settling all matters in dispute in *Gonzalez*. Considering the expense and inconvenience of additional, potentially protracted litigation, and in consideration of the representations, promises, and agreements set forth herein, the Parties have agreed to the settlement of the *Gonzalez* Action. Counsel for Plaintiffs have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate.

NOW, THEREFORE, it is hereby STIPULATED AND AGREED, by and among the Parties, through their respective attorneys, subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the benefits flowing to the Parties from this Agreement, that this Agreement shall constitute a full, fair, and complete settlement of the Action, upon and subject to the following terms and conditions.

## I.    DEFINITIONS

Wherever used in this Agreement, the following terms have the meanings set forth below:

    A. "A-file" or "alien file" means the official U.S. Department of Homeland Security (DHS) record of an individual's immigration history to include the following materials and formats: (a) the paper A-file, (b) the electronic A-file, or (c) a combination of paper and electronic records and supporting documentation.

    B. "Agreement Date" means the date this Agreement is executed by all Parties.

    C. "Box 3 ICE Detainer" means an ICE Detainer issued based on

biometric confirmation of identity and records check of federal electronic databases. On the current detainer form, Form I-247A, Immigration Detainer – Notice of Action, it is the third checkbox in section 1, which states that the basis for the determination of probable cause is: "Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law."

D. "Box 4 ICE Detainer" means an ICE Detainer issued based on: "Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." On the current detainer form, Form I-247A, Immigration Detainer – Notice of Action, it is the fourth checkbox in section 1. As part of this Agreement, Defendants agree to interpret the phrase "other reliable evidence" to encompass only an interview of the Settlement Class member or review of the Settlement Class member's A-file.

E. "Cancel" or "Cancellation" of an ICE Detainer refers to the process by which ICE sends an ICE Detainer to a law enforcement agency with the "cancel the detainer" box checked and any other attendant procedures ICE uses to cancel a detainer from its systems and communicate its cancellation to the law enforcement agency to which the ICE Detainer was issued.

F. "Defendants" means ICE, ICE Deputy Director and Senior Official Performing the Duties of the Director Patrick J. Lechleitner, ICE Los Angeles Interim Field Office Director Michael V. Bernacke, and ICE

1   Law Enforcement Support Center Director Christopher Graupe, and

2   their successors.

3   G. "Detainer Functions of the PERC" means the review of Immigration

4   Alien Responses (IARs), including any successor process to the IAR,

5   and issuance of Box 3 and Box 4 ICE Detainers for individuals detained

6   in a geographical location identified in Appendix A during the times

7   delineated in Appendix A, regardless of where the review of the IAR or

8   issuance of the Box 3 and Box 4 ICE Detainer takes place.

9   H. "Effective Date" means the date this Agreement shall become effective,

10  as set forth in Section IX below.

11  I.  "Final Approval Order" means a Court order granting final approval of

12  this Agreement; holding this Agreement to be fair, reasonable,

13  adequate, and in the best interests of the class; finding that class

14  representatives and class counsel have adequately represented the class;

15  ordering that the Parties implement this Agreement in accordance with

16  its terms and provisions; entering final judgment; dismissing Plaintiffs'

17  claims with prejudice; and retaining jurisdiction over the interpretation,

18  implementation, and enforcement of this Agreement.

19  J.  "ICE" means U.S. Immigration and Customs Enforcement, including

20  the Office of the Principal Legal Advisor (OPLA).

21  K. "ICE Detainer" means any ICE request that a federal, state, or local

22  law enforcement agency maintain custody over an individual beyond

23  the time the individual would otherwise be released from the agency's

24  custody, including but not limited to the request contained in any

25  version of the Form I-247 and any successor form or request. The

26  current detainer form, Form I-247A, Immigration Detainer - Notice of

27  Action, and current ICE policy, expressly limit the request for

28  continued law enforcement custody to no more than 48 hours beyond

6

when the subject would otherwise have been released. The terms of this settlement apply regardless of how the Detainer request is communicated and what Detainer form is used. This definition does not include Form I-247G, Request for Advance Notification of Release, Form I-247N, Request for Voluntary Notification of Release of Suspected Priority Alien, or any equivalent that does not request detention.

L.  "Noncitizen" shall have the same meaning as the term "alien" defined in 8 U.S.C. § 1101(a)(3). The term does not include a noncitizen national of the United States.

M.  "Ongoing Removal Proceedings" means removal, exclusion, or deportation proceedings initiated by the filing of a Notice to Appear or Order to Show Cause with the Immigration Court prior to the issuance of the ICE Detainer.

N.  "Plaintiffs" means Gerardo Gonzalez and Simon Chinivizyan, on behalf of themselves and all members of the Settlement Class.

O.  "Plaintiffs' Counsel" means the American Civil Liberties Union (ACLU) of Southern California; the Seattle Clemency Project; McLane, Bernarski & Litt; the National Day Laborer Organizing Network (NDLON); and the National Immigrant Justice Center (NIJC).

P.  "Probable Cause Statement" means  a written explanation of the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information that are sufficient in themselves to warrant a person of reasonable caution in the belief that an individual is a noncitizen and removable from the United States.

Q.  "Settlement Class" shall mean the class defined in Section II.

R.  "Settled Claims" means all claims for declaratory, injunctive and other

equitable relief against Defendants arising from the facts and circumstances at the time of the allegations made by Plaintiffs in the Third Amended Complaint, including all declaratory and injunctive claims that could have been asserted arising out of the same facts and circumstances alleged. This definition does not include any equitable or other remedies that may be available to a Settlement Class member in removal proceedings before the Executive Office for Immigration Review.

S. "Settlement Termination Date" shall mean five years from the Effective Date.

## II. SETTLEMENT CLASS

### A. Class Definition

The Parties agree to jointly move for certification of a Settlement Class under Rule 23(b)(2) defined as follows: All current and future individuals who are subject to a Box 3 or a Box 4 ICE Detainer, where the ICE Detainer is issued from a location within the Central District of California or where the ICE Detainer was issued under the Detainer Functions of the PERC regardless of where the ICE Detainer was issued.[1] The Settlement Class does not include individuals who are subject to an ICE Detainer issued based upon a final order of removal, deportation, or exclusion or Ongoing Removal Proceedings.

---

[1] Nothing in this Agreement limits the authority of Defendants to change the locations or times covered by the PERC, or make any other operational changes either permanently or on a temporary basis. However, should a function included in the Detainer Functions of the PERC be transferred outside the jurisdiction of the Central District of California, the requirements of this Agreement will continue to apply to such function. Defendants shall notify Plaintiffs' counsel within thirty (30) days regarding any change to the locations or times covered by the PERC. The Parties shall promptly meet and confer in order to update the Reporting requirements under Section VII to account for the changes.

### B.    Class Representatives and Class Counsel

1. The Parties agree that Plaintiffs Gerardo Gonzalez and Simon Chinivizyan shall serve as class representatives of the Settlement Class.

2. The Parties further agree that Plaintiffs' Counsel shall serve as counsel to the Settlement Class.

### C.    Consent Motion

To effectuate the agreement of the Parties regarding the certification of the Settlement Class, the Parties agree that Plaintiffs' Counsel will submit to the Court a motion on the consent of Defendants seeking certification of the Settlement Class concurrently with the Parties' joint application for approval of the Settlement.

## III.    NEUTRAL REVIEW OF PROBABLE CAUSE DETERMINATIONS UNDERLYING ICE DETAINERS

A.    If a Box 3 or Box 4 ICE Detainer is issued by an ICE officer against a Settlement Class member, the Box 3 or Box 4 ICE Detainer shall be presented to a Neutral Reviewer, as described herein, to conduct a neutral review of the underlying ICE probable cause determination. Defendants are under no obligation to create a neutral review process if they do not issue Box 3 or Box 4 ICE Detainers.

1. Neutral Reviewers shall be housed within DHS Headquarters (DHS HQ), and the decision-making of such Neutral Reviewers shall be independent of ICE.

2. Neutral Reviewers will be personnel at the GS-15, equivalent, or higher level with a strong preference for individuals with a juris doctor degree and at least five years of relevant legal experience, preferably as an immigration judge, appellate immigration judge, or administrative law judge.

3. DHS HQ shall set the policies and procedures governing the Neutral Reviewers and their review of probable cause determinations, consistent with this Settlement Agreement. DHS HQ will be solely responsible for, and ICE will play no role in, the hiring, firing, supervising, and day-to-day management of the Neutral Reviewers.

4. DHS HQ will require the Neutral Reviewers to undergo standardized training. (*See* Section V, below).

B.    If a neutral review process is created, Defendants shall notify Plaintiffs' counsel and the Court within ten (10) business days of the establishment of that process and completion of the training contained in Section V.

## IV.    PROCEDURES FOR DETAINER ISSUANCE

ICE shall not issue a Box 3 or a Box 4 ICE Detainer against a Settlement Class member unless and until ICE complies with the following procedures:

A.    **ICE Probable Cause Determinations**

1. An ICE officer shall check the following databases, including any successor database systems, whether individually or through an automated means of consolidated review, to the extent that the databases remain operational and accessible to ICE Enforcement and Removal Operations (ERO) for immigration enforcement purposes:

   i.    National Crime Information Center (NCIC)

   ii.    National Law Enforcement Telecommunications System (NLETS)

   iii.    DHS/USCIS Central Index System (CIS)

   iv.    DHS/USCIS Computer Linked Application Information Management System (CLAIMS)

v.    DHS/ICE Enforce Integrated Database (EID)

vi.    DHS Automated Biometric Identification System (IDENT)

vii.    DHS/CBP Arrival and Departure Information System (ADIS)

viii.    DHS/ICE Student and Exchange Visitor Information System (SEVIS)

ix.    DHS/USCIS Global

x.    DOJ Executive Office for Immigration Review (EOIR) systems

xi.    U.S. Department of State's Consular Consolidated Database (CCD), and

xii.    When there are indicators that a person may have been born in California before 1996, the California Birth Index (https://www.californiabirthindex.org/).

2. An ICE officer shall not be permitted to issue a Box 3 ICE Detainer against a Settlement Class member who falls within one of the categories described in Subsection IV.D. below. For Settlement Class members who fall within one of those categories, ICE shall conduct an interview of the Settlement Class member or review the Settlement Class member's A-file before proceeding to subsection IV.A.3. immediately below.

3. When issuing a Box 3 or Box 4 ICE Detainer, the ICE officer will create a Probable Cause Statement. This Probable Cause Statement will include reference to all sources that were relied upon to formulate the probable cause assessment. This will include reference to whether database(s) were checked, and if so, the name(s) of the database(s) and the results of the database checks. The officer need not summarize the contents of each system checked.

4. The ICE officer shall submit the Probable Cause Statement together with the results of all databases the officer checked (regardless of whether they yielded a positive or negative result or whether they were relied upon by ICE) to the Neutral Reviewer. This combined information, along with a copy of the ICE Detainer, will be known as the "detainer package."

**B.** **Neutral Review**

1. As soon as practical, but no more than 48 hours (including weekends and holidays) of issuance of an ICE Detainer against a Settlement Class member, except in the case of an individual detained in state or federal prison with three months or more remaining on their sentence at the time of the interoperability hit, currently known as an Interoperability Alien Query (IAQ), in which case not more than 14 calendar days of detainer issuance, ICE shall obtain review and concurrence with ICE's probable cause determination from a Neutral Reviewer.

2. The Neutral Reviewer will assess the detainer package to determine if the ICE officer has established probable cause that the person is a noncitizen and removable under the immigration laws.

3. The Neutral Reviewer's decision will be limited to concurrence or nonconcurrence with ICE's probable cause determination.

4. ICE will store detainer packages submitted for review and the results of the neutral review until the Settlement Termination Date.

**C.** **Neutral Review Nonconcurrence or Expiration of 48 Hours**

Should neutral review not be completed within the time period referenced in Section IV.B.1. or should the neutral review result in nonconcurrence, absent

extraordinary circumstances,[2] the following procedures apply:

1. ICE's case management system shall automatically update to reflect that the ICE Detainer cannot be acted upon, and the ICE Detainer must be cancelled.

2. Within three hours, ICE shall notify the relevant law enforcement agency (LEA), through the typical channel of communication regarding ICE Detainers between ICE and that LEA (typically email or fax), that the LEA may not rely on the ICE Detainer. The notification will contain the language in Appendix B.

3. ICE will cancel the ICE Detainer as expeditiously as practicable, generally within 48 business hours, except for circumstances in which staffing or operational exigencies require additional time to complete the cancellation, in which case cancellation will take no longer than 10 calendar days. Only in extraordinary circumstances (defined in footnote 2), may a cancellation take longer than 10 calendar days. ICE will only take longer than 48 business hours to cancel detainers in limited circumstances and in most cases will cancel the detainer expeditiously within 48 business hours.

4. Prior to assuming physical custody of a Settlement Class member, an ICE officer shall review ICE's case management system to confirm that a Nonconcurrence or Expiration of the time period in Section IV.B.1 has not been issued. If the case management system reflects a Nonconcurrence or Expiration of the time period in Section IV.B.1, the officer will confirm that ICE cancelled the ICE

---

[2] Extraordinary circumstances shall generally be understood to be IT-related delays or malfunctions, including with regard to non-ICE databases, or any event that would necessitate an office closure, such as weather-related emergencies (e.g., hurricanes, significant winter storms, tornados), other natural disasters, civil unrest, acts of terrorism, or a public health emergency such as a pandemic.

Detainer and, if not, will cancel the ICE Detainer.

5. If a Neutral Reviewer issues a nonconcurrence determination, ICE shall not issue a new ICE Detainer against the individual absent new evidence. The new ICE Detainer would be subject to the same procedures for detainer issuance set forth in this section.

*Remedies Where a Settlement Class Member is Taken into ICE Custody Prior to the Nonconcurrence or Expiration of the Time Period in Section IV.B.1*

6. If a Settlement Class member is taken into ICE physical custody within the time period in Section IV.B.1 but before neutral review has occurred, the neutral review shall still occur. For this subset of Settlement Class members, the following remedies apply depending on whether the time period in Section IV.B.1 expires or the Neutral Reviewer issues a nonconcurrence:

   a. **Neutral Review Does Not Occur within the Time Period in Section IV.B.1:**

      i. Class Members detained pursuant to section 236(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1226(a): These class members shall be released from ICE custody.

      ii. Class Members detained pursuant to section 236(c) of the INA, 8 U.S.C. § 1226(c): These class members will not be released from ICE custody, but DHS will promptly notify the class member, their legal representative (if any), and the immigration judge presiding over the removal proceedings that there was no neutral review timely completed, as required by the *Gonzalez v. ICE* settlement agreement.

14

**b.**    **Neutral Review Results in a Nonconcurrence:**

    i.    <u>Class Members detained pursuant to section 236(a) of the INA, 8 U.S.C. § 1226(a)</u>: These class members shall be released from ICE custody.

    ii.    <u>Class Members detained pursuant to section 236(c) of the INA, 8 U.S.C. § 1226(c)</u>: These class members will be released from ICE custody, unless new evidence beyond that submitted to the Neutral Reviewer is obtained supporting removability. Where ICE uses additional evidence gathered after arrest to overcome a nonconcurrence, ICE must document in the class member's Form I-213, Record of Inadmissible/Deportable Alien: 1) the additional evidence; and 2) how that evidence was obtained. ICE must provide a copy of the Form I-213 (subject to redactions for Personally Identifying Information (PII) and Law Enforcement Sensitive information) to the class member and their legal representative (if any).

7.    Notwithstanding Section IV.C., ICE may request that the Secretary of Homeland Security or the Secretary's designee review a Neutral Reviewer's nonconcurrence determination for a Settlement Class member's Box 3 or Box 4 Detainer.  In response to an ICE request for review, the Secretary or the Secretary's designee may overrule the determination of the Neutral Reviewer, concur with the determination, or take no action.  Elevation of a nonconcurrence determination to the Secretary for review should be exceptionally rare.  If the Secretary or the Secretary's designee concurs with the Neutral Reviewer's nonconcurrence determination, or takes no

action within two business days of ICE's request, the decision of the

Neutral Reviewer shall stand and the procedures in Section IV.C

shall apply. The Secretary's review shall be limited to the question

of whether probable cause of noncitizenship and removability has

been established based on the detainer package, the conclusions of

the Neutral Reviewer, and any other available evidence, including

any evidence that was not available to the Neutral Reviewer.  In the

event the Secretary or the Secretary's designee overrules a

determination to cancel a Settlement Class member's Box 3 or Box

4 Detainer, Defendants shall notify Plaintiffs' counsel which

Settlement Class member's neutral review determination was

overruled in the next scheduled reporting period.

**D.      <u>ICE Detainers That Require an Interview or A-file Review</u>**

ICE officers shall not be permitted to issue a Box 3 ICE Detainer against

any Settlement Class member who falls within any of the following categories:

1.  ICE has physical access to the jail or prison where the individual is
    in custody within 30 miles of the nearest ERO office, or the facility
    is willing to facilitate a video or telephonic interview with the
    individual;

2.  There is no biometric fingerprint match with the DHS IDENT
    database (or any successor electronic repository for fingerprint
    records);

3.  The sole evidence of a person's current immigration status is based
    on the class of admission ("COA") field in the CIS database, unless
    no other immigration database shows a change of the individual's
    immigration status from the status reflected in the COA.

4.  The individual is in state or federal prison and has more than six
    months remaining on their sentence from the time of the

interoperability hit, currently known as the IAQ, that brings an individual to ICE's attention;

5. The individual is in state or federal prison and has between three and six months remaining on their sentence at time of the interoperability hit, currently known as the IAQ, that brings an individual to ICE's attention; provided the A-File is in the physical possession of ICE ERO or an interview of the individual is permitted by the facility;

6. DHS databases include conflicting information regarding whether the individual was born in the United States or is otherwise a U.S. citizen;

7. Checks of databases referenced in Section IV.A.1 above indicate prior U.S. military service;

8. Database checks show the individual became a lawful permanent resident as a minor and the ICE officer cannot affirmatively confirm through database checks the identity of both parents and that neither parent naturalized prior to the individual's eighteenth birthday.

## V. TRAINING

### 1. Neutral Review Training

Before a Neutral Reviewer conducts a neutral review of an ICE probable cause determination for any Box 3 or Box 4 Detainer ICE issues against a Settlement Class member, the Neutral Reviewer will receive training developed by DHS HQ. Training and related materials will include, at a minimum, the following topics:

1. Familiarity with the ICE Detainer form and the difference between Box 3 and Box 4 ICE Detainers;

2. U.S. citizenship law;

17

3.  The various forms of immigration status;

4.  Grounds of removability from the United States;

5.  Class of admission (COA) and field codes utilized in the databases listed in Section IV.A. above;

6.  The content and any known objective gaps or limitations of the databases listed in Section IV.A. and relied upon to issue ICE Detainers;

7.  The Neutral Review of Probable Cause Determinations and Procedures for Detainer Issuance provisions of this Settlement Agreement, including training on what must be included in a detainer package and the circumstances under this Settlement Agreement when a Probable Cause Statement must be supported by an interview or A-File review.

8.  The requirements for establishing Probable Cause.

## 2.  ICE Officer Training

Prior to issuing Box 3 or Box 4 ICE Detainers against Settlement Class members, ICE officers shall be trained, with periodic refresher training, at a minimum, on the following:

1.  The provisions of Section IV of this Settlement Agreement.

2.  The content and known objective gaps and limitations of the databases listed in Section IV.A. and relied upon to issue ICE Detainers.

## VI.  MODIFICATIONS TO ICE DETAINER FORM AND EXISTING PROCEDURES

By the Effective Date, Defendants shall:

1.  Amend the ICE Detainer forms to replace all uses of the word "alien" with

"individual."

2. Amend the ICE Detainer forms to include a non-toll-free telephone number to the existing ICE Law Enforcement Support Center (LESC) hotline, so that individuals who are incarcerated can contact an ICE officer or contractor if they believe a detainer was placed on them in error.

3. Amend the service language on the ICE Detainer forms as set forth in Appendix C.

4. Post the Frequently Asked Questions, attached as Appendix D, on its public facing website.

5. Ensure the following provisions, currently reflected in ICE Policy Number 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers*, remain in force and are applied to all ICE Detainers issued against Settlement Class members:

    a. ICE immigration officers must establish probable cause to believe that the subject is a noncitizen who is removable from the United States before issuing an ICE Detainer.

    b. The term "probable cause" is defined as the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information that are sufficient in themselves to warrant a person of reasonable caution in the belief that an individual is a removable noncitizen.

    c. As a matter of policy, ICE may not establish probable cause to believe that the subject is a noncitizen who is removable from the United States solely based on evidence of foreign birth and the absence of records in available databases.

## VII. REPORTING

1. Six months after the Effective Date and continuing thereafter every

19

six months until the Settlement Termination Date, Defendants shall report to Plaintiffs' Counsel every six months the following statistical information about all Box 3 and Box 4 ICE Detainers issued against Settlement Class members in a searchable and sortable excel spreadsheet format:

1. Unique Subject Identifier

2. Subject's Country of Birth

3. Subject's Country of Citizenship

4. Date and Time of the Immigration Alien Query (IAQ) that triggered the detainer investigation

5. Name of Detention Facility where the biometric background check was initiated that resulted in the IAQ

6. State of the Detention Facility where biometric background check was initiated that resulted in the IAQ

7. Name of ICE Office issuing Detainer

8. Date and Time Detainer issued

9. Record of whether the Detainer was a Box 3, Box 4, or Both

10. Date and Time Detainer Package submitted for Neutral Review

11. Unique Neutral Reviewer Identifier

12. Date and Time of Neutral Review Determination (with notation when review is not completed within the time period in Section IV.B.1)

13. Neutral Review Probable Cause Result: Concurrence/ Nonconcurrence / Expiration of the time period in Section IV.B.1

14. Date and Time Case Management Systems updated to reflect Neutral Review Result: Concurrence, Nonconcurrence, or Expiration of the time period in Section IV.B.1

15. Whether the Secretary Overruled a Nonconcurrence Determination (Y/N)

16. Date and Time Detainer Cancellation communicated to LEA (where

applicable)

17 Date and Time Canceled Detainer issued (where applicable)

18. Date, Time, and Location Individual Booked into ICE custody (where applicable)

19. For Individuals Booked into ICE custody prior to expiration of 48-hour review period – Identify whether individual was subject to detention under section 236(a) of the INA, 8 U.S.C. § 1226(a), or section 236(c) of the INA, 8 U.S.C. § 1226(c).

20. If Column 19 applies: For individuals subject to detention under section 236(a) of the INA, 8 U.S.C. § 1226(a) - Date and Time Individual Released from ICE custody when neutral review results in Nonconcurrence or Expiration of 48-hours

21. If Column 19 applies: For individuals subject to detention under section 236(c) of the INA, 8 U.S.C. § 1226(c) [Expiration of 48-hours] - Date and Time Written Notification of Noncompliance with Gonzalez Settlement was provided to the Subject

22. If Column 19 applies: For individuals subject to detention under section 236(c) of the INA, 8 U.S.C. § 1226(c) [Expiration of 48-hours] - Date and Time Written Notification of Noncompliance with Gonzalez Settlement was provided to the Immigration Court

23. If Column 19 applies: For individuals subject to detention under section 236(c) of the INA, 8 U.S.C. § 1226(c) [Nonconcurrence] - Date and Time Form I-213 was provided to the Subject


2.      Six months after the Effective Date and continuing thereafter every six months until the Settlement Termination Date, Defendants shall report to Plaintiffs' Counsel statistical information from the previous six months regarding all Immigration Alien Responses (IARs) from the ACRIMe

21

Completed Queue that were assigned or routed to the PERC with an Originating Agency Identifier (ORI) from a law enforcement agency (LEA) located outside the Central District of California. Defendants shall produce the following data fields regarding those IARs in a searchable and sortable excel spreadsheet format:

1. Received Time
2. Query Type
3. AOR
4. Unique Identifier for Alien Number
5. IAR Status
6. PERC Case Status
7. Field Case Status
8. Immigration Status

For every entry where the "Field Case Status" indicates "Detainer," Defendants shall produce a copy of the ICE Detainer that was issued [or a record of the ICE Office that issued the ICE Detainer and the date and time it was issued].

**VIII. TERMS OF ORDER FOR FINAL JUDGMENT**

    A. Within ten (10) business days after the Agreement Date, or by a different deadline agreed to between the Parties, the Parties shall jointly apply to the Court for approval of this Agreement, certification of the Settlement Class and request that the Court retain jurisdiction over this action to enforce the terms of this Agreement.

    B. Should the Court enter an order preliminarily or finally approving the settlement that contains substantive provisions different from this Agreement, the Parties shall meet and confer in good faith regarding the differences and shall either accept the Court's orders as written or use their best efforts to undertake whatever efforts are necessary to obtain Court

22

orders satisfactory to both Parties. The parties agree that alterations to
filing deadlines or hearing dates shall not be considered modifications of
substantive provisions.

## IX.    EFFECTIVE DATE OF SETTLEMENT

A. The Effective Date shall be 90 days after the date the Court enters its Final
Approval Order of this Agreement.

B. Except as otherwise provided herein, if the Agreement is terminated or
modified in any material respect or fails to become effective for any
reason, then none of the Agreement's terms shall be effective or
enforceable; the Parties to this Agreement shall be deemed to have reverted
to their respective status in the Action as of the date and time immediately
prior to the Agreement Date; and except as otherwise expressly provided,
the Parties shall proceed in all respects as if this Agreement and any related
orders had not been entered. If the Agreement is terminated or modified in
any material respect, the Parties shall be deemed not to have waived, not to
have modified, or not to be estopped from asserting any additional
defenses or arguments available to them.

## X. TERMINATION OF OBLIGATIONS

The obligations of this Agreement shall terminate five years from the
Effective Date.

## XI. RELEASE OF CLAIMS

As of the Effective Date, Plaintiffs, on behalf of themselves, their heirs,
executors, administrators, representatives, attorneys, successors, assigns, agents,
and Settlement Class members fully, finally, and forever release, relinquish, and
discharge the Defendants of and from any and all of the Settled Claims. The

23

Parties agree and acknowledge that this Release shall not apply to claims that arise or accrue after the Effective Date of this Agreement.

## XII. NO ADMISSION OF WRONGDOING

This Agreement, whether or not executed, and any proceedings taken pursuant to it:

1. Shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against Settlement Class members, consistent with the Constitution and laws of the United States, and applicable regulations;

2. Shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants of the truth of any fact alleged by the Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action, or of any liability, negligence, fault, or wrongdoing of the Defendants; or any admission by the Defendants of any violations of, or failure to comply with, the Constitution, laws or regulations; and

3. Shall not be offered or received against the Defendants as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, nor shall it create any substantive rights or causes of action against any of the Parties to this Agreement, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, Defendants may refer to

it and rely upon it to effectuate the liability protection granted them hereunder.

**XIII.  DISPUTE RESOLUTION**

In the event of any disputes regarding implementation of the Settlement Agreement as set forth herein, they shall be resolved exclusively by this Court in the United States District Court for the Central District of California. The District Court shall have the power to award such relief and issue such judgments as the Court deems proper.

**XIV. MISCELLANEOUS PROVISIONS**

A. <u>Attorneys' Fees and Costs</u>. The Parties agree that ICE shall pay Plaintiffs the amount of $ 675,000 in attorneys' fees and costs.

B. <u>Entire Agreement</u>. This Agreement contains the entire agreement between the Parties and constitutes the complete, final, and exclusive embodiment of their agreement with respect to the Action.  This Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement.

C. <u>Modifications and Amendments</u>. No amendment, change, or modification to this Agreement shall be valid unless in writing signed by the Parties or their counsel.

D. <u>Governing Law.</u> This Agreement is governed by federal law and must be interpreted under federal law and without regard to conflict of laws principles.

E. <u>Further Assurances</u>. The Parties shall execute and deliver any additional papers, documents, and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Agreement

and to carry out this Agreement's expressed intent.


For and on behalf of Plaintiffs and the Class:


EXECUTED this 22nd day of November, 2024.


MAYRA JOACHIN
*mjoachin@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W 8th Street, Suite 200
Los Angeles, CA 90017
Phone: (213) 977-5291


MARK FLEMING
Director Of Litigation
NATIONAL IMMIGRANT JUSTICE CENTER
Chicago, IL
Phone: (312) 660-1628


Counsel for Plaintiffs


For and on behalf of Defendants:


EXECUTED this 22nd day of November, 2024.


ELISSA P. FUDIM
*Trial Attorney*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-6073
Email: Elissa.P.Fudim@usdoj.gov


Counsel for Defendants